## STATE EX REL. JOHN STRUPP v. JOHN A. ANDERSON.[1]

November 27, 1925.

No. 24,817.

**Sale of intoxicating liquor prohibited by city charter.**

    1. By charter provisions authorizing a city council to enact and enforce ordinances for the government and good order of the city, for the suppression of vice and intemperance and the prevention of crime, power was conferred to prohibit the sale of intoxicating liquor. That result is but confirmed by the more particular language of a subsequent section expressly authorizing that prohibition.

**Ordinance not made invalid by prohibition of licenses illegally granted.**

    2. The ordinance in question is not invalidated because its prohibition does not apply to a licensed dealer, subsequent provisions of the ordinance prohibiting licenses contrary to the Constitution of the United States, any act of Congress passed in conformity therewith or any law of the state which shall forbid vending, dealing in or disposing of intoxicating liquor.

[1]Reported in 206 N. W. 51.

**Ordinance not suspended by state prohibition law.**

    3. The ordinance is not suspended by section 27, chapter 455, L. 1919 (section 3228, G. S. 1923), the state prohibition law, which suspends all ordinances and charter provisions *inconsistent* therewith.

**Statute authorized appropriate ordinances in effect at time of its passage.**

    4. Chapter 338, L. 1921 (section 3235, G. S. 1923), authorizes municipal ordinances prohibiting the disposition by sale or other enumerated methods of intoxicating liquor. The effect is to authorize appropriate legislation in force when the act was passed as well as that subsequently enacted.

**Case followed.**

    5. City of Red Wing v. Nibbe, 160 Minn. 274, followed to the effect that the right of appeal after summary trial and conviction for a violation of a municipal ordinance may be denied.

**Summary conviction for violation of ordinance allowable, although offense is indictable.**

    6. The fact that an act which is a violation of a municipal ordinance is also an indictable offense under state law, does not prevent summary trial and conviction for the former without the right of trial by jury.

    1. See Intoxicating Liquors, 33 C. J. p. 522, § 70.
    2. See Intoxicating Liquors, 33 C. J. p. 528, § 79 (Anno).
    3. See Intoxicating Liquors, 33 C. J. p. 528, § 80.
    4. See Intoxicating Liquors, 33 C. J. p. 521, § 70.
    5. See Municipal Corporations, 28 Cyc. p. 821.
    6. See Constitutional Law, 12 C. J. p. 1208; 981 (Anno); Juries, 35 C. J. p. 193, § 97; Municipal Corporations, 28 Cyc. p. 812.

Upon the relation of John Strupp the district court for Goodhue county granted its writ of habeas corpus directed to John A. Anderson, sheriff. The writ was discharged, Schultz, J., and John Strupp appealed. Affirmed and relator remanded.

*A. J. Rockne, F. M. Wilson* and *Albert Mohn,* for appellant.
*Thomas Mohn,* for respondent.

STONE, J.

After a summary trial before a justice of the peace, a conviction of unlawfully selling intoxicating liquor in the city of Red Wing and a sentence to imprisonment for 60 days, the relator procured a writ of habeas corpus from the district court. Upon hearing, the writ was discharged and relator appeals. The arguments advanced in his behalf will be disposed of in their order, our only problem being to determine whether there was jurisdiction for the trial, conviction and sentence challenged by the writ.

The conviction was for violation of an ordinance entitled: "To restrain, prevent and prohibit any person or persons from vending, dealing in, giving, or disposing of" intoxicating liquors within the limits of the city, "unless thereto duly licensed by the City Council." It provides that every violator shall, upon conviction, "be punished by a fine of not more than one hundred dollars or by imprisonment in the city or county jail for not more than ninety days." It is true that the ordinance contemplates licenses, but it provides that none shall be issued contrary to the Constitution of the United States, or any act of Congress passed in conformity therewith or any law of the state of Minnesota which shall forbid such "vending, dealing, giving or disposing of" intoxicating liquor.

There is nothing in the point that the city council did not have the power to enact such an ordinance for, by the home rule charter, the council is given "full power and authority" to enact and enforce ordinances "for the government and good order of the city, for the suppression of vice and intemperance, and for the prevention of crime," and to "impose penalties and punishments by fine, imprisonment or both." That language is general but sufficient for present purposes. The direct and causal relation of intemperance to disorder, vice and criminality is so undeniable that the necessity for its suppression is obvious. But, in addition to this general language, the charter, in the second subdivision of section 5, expressly authorizes the city council to prohibit within the city the disposition of intoxicating liquors in any manner "unless thereto duly licensed by the City Council." The force of that prohibition

is in no way mitigated, nor is the provision itself abrogated by the fact that the city is prevented by the paramount law of nation and state from licensing the sale of intoxicating liquor.

Merit is equally lacking from the next point for relator which is that the provisions of the charter and ordinance in question have been suspended by section 27 of chapter 455, p. 548, L. 1919 (G. S. 1923, § 3228), the state prohibition law. That portion of section 27 now invoked by appellant suspends "all laws and parts of laws, ordinances and charter provisions inconsistent" with the state law. The applicable provisions of the charter and ordinances now under consideration are not inconsistent and therefore remain unaffected by the statute. Moreover, by chapter 338, p. 519, L. 1921 (G. S. 1923, § 3255), the council or principal governing body of any city, village or borough, whether operating under a home rule charter or not, has the power to prohibit the disposition by sale, or the other methods therein enumerated of intoxicating liquor. The effect of such an act is to authorize not only subsequent but existing appropriate legislation. Vigliotti v. Penna. 258 U. S. 403, 42 Sup. Ct. 330, 66 L. ed. 686.

Another argument for relator is that the act for which he was convicted is an indictable criminal offense against the state, but that notwithstanding he was summarily tried, convicted and sentenced to imprisonment, without a trial by jury which he demanded, and that the ordinance under which he has been so dealt with denies him the right to a review of his trial, conviction and sentence by appeal or certiorari. Section 10 of chapter 3, invests justices of the peace with "sole and exclusive jurisdiction of all suits, prosecutions, or proceedings for any violation of any ordinance" and section 14 enacts that no appeal shall be allowed "from any judgment or ruling of any Justice of the Peace of said City, rendered or made in any action or prosecution for any violation * * * of any ordinance" and attempts to prohibit the issue of any writ of certiorari "in any such case."

For the reasons stated in City of Red Wing v. Nibbe, 160 Minn. 274, 199 N. W. 918, the denial of an appeal from a conviction under an ordinance is permissible. The right of appeal is given by statute

and in consequence may be taken away by statute. In this state a home rule charter, otherwise unobjectionable, has the force of statutory law within the limits of the municipality to which it applies.

Whether the right of one convicted in such a case to a writ of certiorari, as well as an appeal, may be taken away, is, as was recognized in the Nibbe case, another and more serious question. It is not here for consideration, because the relator has not attempted to invoke that remedy and is not in a position to complain because its attempted denial is by a clearly severable provision, the invalidity of which, if in fact it is invalid, would not affect any other portion of the charter.

Finally, relator urges that the offense for which he was summarily tried and convicted, being an indictable crime under state law, has passed out of the category of "petty offenses," to the summary trial of which without a jury there has never been any constitutional objection. We are mindful that necessity may arise, in view of the modern tendency to extend state control over matters heretofore considered as best left to local regulation, of reconsidering and possibly defining anew the limits beyond which legislatures and municipal councils cannot go in visiting summary conviction under an ordinance upon acts which are also crimes against the state, the practical result being that for the same act, if not for the same offense, the offender may be twice punished by deprivation of his liberty, once by the municipality and once by the state.

But as long as we are concerned with evils such as that of intemperance, which has a definitely local aspect because of the community disorder and deterioration which always attend it, we shall not depart from the wholesome rule adopted in State v. Lee, 29 Minn. 445, 13 N. W. 913. That was a case where the keeper of a house of ill-fame had been convicted and punished under a city ordinance and yet was held subject to subsequent indictment and trial and a second conviction and punishment under state law. Intemperance and prostitution are such habitual companions that the reasoning which for present purposes is applicable to one is equally so to the other. In the language of Mr. Justice Vanderburgh, in

the Lee case that reasoning in substance is: "The city ordinance does not have respect to the guilt or moral turpitude of the act * * * considered as a crime, but only to the purposes of a police regulation." So while an act, outside a city, may subject an offender "to punishment by the state only, committed inside its limits, by reason of the place and the consequent aggravation attending it," may "render him liable also to the additional penalty. The same act, prohibited by both the city and the state, may thus constitute two offenses, which are intrinsically and legally distinguishable." So two offenses may arise from the same act, and one be triable in one court and one in another; one summarily and the other in the usual manner. "The offense triable in each court is necessarily distinct * * * . Offenses, to be the same, must be identical in law as well as in fact."

Pearson v. Wimbish, 124 Ga. 701, 52 S. E. 751, 4 Ann. Cas. 501, relied upon by relator, has had careful consideration. It is easily distinguishable. There, for a petty offense, that of being drunk and disorderly, the accused was tried summarily without a jury and sentenced to three months with the "county chain-gang." The petition for the writ averred that immediately upon conviction the petitioner was manacled in irons "riveted around his legs," clothed in penitentiary stripes and immediately set to work on the public roads with a chain-gang. The punishment was one habitually resorted to for the lesser felonies and was considered to be of such a nature as to prevent the misdemeanor for which it was imposed, being a petty offense and triable summarily. Of course the petitioner was discharged. We have no such violation of due process to deal with here and possibly may never have a similar situation as long as there remains in our state Constitution section 8 of article 6, limiting the criminal jurisdiction of justices of the peace to cases where the punishment does not exceed a fine of $100 or imprisonment in the county jail for not to exceed 90 days.

The order appealed from is affirmed. The subsequent order, admitting relator to bail pending the further order of the district court, will be vacated and the relator remanded to the custody of the sheriff to serve the remainder of his sentence.

So ordered.