## DISTRICT OF COLUMBIA *v.* CLAWANS.

No. 103. Argued November 18, 1936. Reargued March 1, 1937.—Decided April 5, 1937.

*Mr. Raymond Sparks,* with whom *Messrs. Elwood Seal* and *Vernon E. West* were on the brief, for petitioner.

*Mr. Seth W. Richardson,* with whom *Mr. Allen Caruthers* and *Miss Lillian Clawans* were on the brief, for respondent.

622

MR. JUSTICE STONE delivered the opinion of the Court.

Respondent was convicted in the District of Columbia police court of engaging, without a license, in the business of a dealer in second-hand personal property, to-wit, the unused portions of railway excursion tickets, in violation of § 7, par. 39, of the Act of Congress, approved July 1, 1902, 32 Stat. 622, c. 1352, as amended by the Act of July 1, 1932, 47 Stat. 550, c. 356. On arraignment she demanded a jury trial, which was denied, and on conviction she was sentenced to pay a fine of $300 or to be confined in jail for sixty days. The case was brought to the Court of Appeals for the District of Columbia by writ of error to review the denial of the respondent's request for a jury, and other rulings of the trial court which, it was claimed, had deprived her of a fair trial. The Court of Appeals reversed the judgment, holding that a jury trial was guaranteed to petitioner by the Constitution, but that the trial had been fair in other respects. 66 App. D. C. 11; 84 F. (2d) 265. We granted certiorari.

The statute under which petitioner was convicted provides that the offense may be prosecuted in the District of Columbia police court and is punishable by a fine of not more than $300 or imprisonment for not more than ninety days. The Code of the District of Columbia

(1929) Tit. 18, § 165, provides that prosecutions in the police court shall be on information and that the trial shall be by jury in all cases "in which, according to the Constitution of the United States, the accused would be entitled to a jury trial," and that, "In all cases where the accused would not by force of the Constitution of the United States be entitled to a trial by jury, the trial shall be by the court without a jury, unless in . . . cases wherein the fine or penalty may be more than $300, or imprisonment as punishment for the offense may be more than ninety days, the accused shall demand a trial by jury, in which case the trial shall be by jury." Article III, § 2, Clause 3, of the Constitution, provides that "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury. . . ." The Sixth Amendment declares that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, . . ."

It is settled by the decisions of this Court, which need not now be discussed in detail, that the right of trial by jury, thus secured, does not extend to every criminal proceeding. At the time of the adoption of the Constitution there were numerous offenses, commonly described as "petty," which were tried summarily without a jury, by justices of the peace in England, and by police magistrates or corresponding judicial officers in the Colonies, and punished by commitment to jail, a workhouse, or a house of correction.[1] We think, as the Court of Appeals held and

---

[1] 4 Blackstone, Commentaries, 280–281; McNamara's Paley on Summary Convictions (4th ed. 1856), 10–12; Dillon, Municipal Corporations, § 433 (5th ed. 1911, § 750). A comprehensive collection of the statutes, English and American, will be found in Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury, 39 Harv. L. Rev. 917, 922–965, 983–1019.

respondent concedes, that, apart from the prescribed penalty, the offense of which petitioner was convicted is, by its nature, of this class, and that were it not for the severity of the punishment, the offender could not, under our decisions, claim a trial by jury as of right. *Schick* v. *United States,* 195 U. S. 65; and see *Callan* v. *Wilson,* 127 U. S. 540, 552, 555; *Natal* v. *Louisiana,* 139 U. S. 621, 624; *District of Columbia* v. *Colts,* 282 U. S. 63, 72, 73.

Engaging in the business of selling second-hand property without a license was not indictable at common law. Today it is at most but an infringement of local police regulations, and its moral quality is relatively inoffensive. But this Court has refused to foreclose consideration of the severity of the penalty as an element to be considered in determining whether a statutory offense, in other respects trivial and not a crime at common law, must be deemed so serious as to be comparable with common law crimes, and thus to entitle the accused to the benefit of a jury trial prescribed by the Constitution. See *Schick* v. *United States, supra,* 67–68.

We are thus brought to the question whether the penalty, which may be imposed for the present offense, of ninety days in a common jail, is sufficient to bring it within the class of major offenses, for the trial of which a jury may be demanded. The court below thought, as we do, that the question is not free from doubt, but concluded, in view of the fact that the statute allows no appeal as of right from the conviction for the offense, and in view of its own estimate of the severity of the penalty, that three months' imprisonment is a punishment sufficiently rigorous to place respondent's delinquency in the category of major offenses.

If we look to the standard which prevailed at the time of the adoption of the Constitution, we find that confinement for a period of ninety days or more was not an un-

usual punishment for petty offenses, tried without a jury. Laying aside those for which the punishment was of a type no longer commonly employed, such as whipping, confinement in stocks and the like, and others, punished by commitment for an indefinite period, we know that there were petty offenses, triable summarily under English statutes, which carried possible sentences of imprisonment for periods from three to twelve months.[2] At least sixteen statutes, passed prior to the time of the American Revolution by the Colonies, or shortly after by the newly-created States, authorized the summary punishment of petty offenses by imprisonment for three months or more.[3] And at least eight others were punishable by imprisonment for six months.[4]

In the face of this history, we find it impossible to say that a ninety day penalty for a petty offense, meted out

---

[2] Three months: 5 Anne, c. 14, IV; 1 Geo. I, c. 48, II. Six months: 17 Geo. II, c. 5, IX. One year: 5 Eliz., c. 4, XXI; 5 Eliz., c. 15, II; 7 Jac. I, c. 4, VII; 8 Geo. I, c. 2, XXXVI; 15 Geo. II, c. 33, VI.

[3] Georgia: 18 Colonial Records (Candler) 588 (1764). Maryland: Laws 1768 (Kilty) c. 29, § 16. Massachusetts: Province Laws 1764–1765, c. 30, §§ 2, 5, 4 Acts and Resolves of Mass. Province 763. New Hampshire: Laws 1696 [8 Wm. III] c. 1, § 1. New Jersey: Paterson's Laws of New Jersey, at 410, § 3 (Act of June 10, 1799). New York: 3 Colonial Laws 318 (1743); 3 id. 855 (1751); 4 id. 304 (1758); 4 id. 349 (1759); 4 id. 748 (1763); 4 id. 925 (1766). North Carolina: Laws 1778, c. 2, 24 State Records 158. Pennsylvania: 7 Statutes at Large of Pennsylvania from 1682 to 1801, c. 534, § 12 (1766); 8 id., c. 623, § 2 (1771). Virginia: 29 Geo. II, c. 4, § 4 (1756); Laws 1787, c. 48, § 13. See also Connecticut, 1786 Stat. 36 (four months).

[4] Maryland: Laws 1715 (Kilty) c. 44, § 34. Massachusetts: Province Laws 1752–1753, c. 16, § 1, 3 Acts and Resolves of Mass. Province 645. New Hampshire: 3 Laws of New Hampshire (Metcalf) 72 (1754); 4 id. 75 (1777). New Jersey: 27 & 28 Geo. II, c. 261, § 11, Acts of Province of New Jersey (Allinson) 198, 201 (1754). New York: 3 Colonial Laws 1096 (1755); Laws 1785, c. 40, § 3; Laws 1785, c. 47, § 2.

upon a trial without a jury, does not conform to standards which prevailed when the Constitution was adopted, or was not then contemplated as appropriate notwithstanding the constitutional guarantee of a jury trial. This conclusion is unaffected by the fact that respondent is not entitled to an appeal as of right. Code of the District of Columbia (1929) Tit. 18, § 28. The safeguards of an appeal are different in nature and purpose from those of a jury trial. At common law there was no review of criminal cases as of right. Due process does not comprehend the right of appeal, *McKane* v. *Durston,* 153 U. S. 684, 687. The early statutes providing for summary trial often did not allow it. And in any case it cannot be assumed that the authority to allow an appeal, given to the justices of the Court of Appeals by the District laws, will not be exercised in a proper case.

We are aware that those standards of action and of policy which find expression in the common and statute law may vary from generation to generation. Such change has led to the abandonment of the lash and the stocks, and we may assume, for present purposes, that commonly accepted views of the severity of punishment by imprisonment may become so modified that a penalty once thought to be mild may come to be regarded as so harsh as to call for the jury trial, which the Constitution prescribes, in some cases which were triable without a jury when the Constitution was adopted. See *Schick* v. *United States, supra,* 67, 68; compare *Weems* v. *United States,* 217 U. S. 349, 373; *District of Columbia* v. *Colts, supra,* 74; *Powell* v. *Alabama,* 287 U. S. 45, 71–73; *United States* v. *Wood,* 299 U. S. 123, 141 *et seq.* But we may doubt whether summary trial with punishment of more than six months' imprisonment, prescribed by some pre-Revolutionary statutes,[5] is admissible without concluding

---

[5] See footnote 2, *supra.*

that a penalty of ninety days is too much. Doubts must be resolved, not subjectively by recourse of the judge to his own sympathy and emotions, but by objective standards such as may be observed in the laws and practices of the community taken as a gauge of its social and ethical judgments.

Congress itself, by measuring the punishment in this case in conformity to the commonly accepted standard when the Constitution was adopted, and declaring that it should be applied today unless found to transgress constitutional limitations, has expressed its deliberate judgment that the punishment is not too great to be summarily administered. A number of states have continued in force statutes providing for trial, without a jury, of violations of municipal ordinances, and sundry petty statutory offenses, punishable by commitment for three months or more.[6] Convictions under such legislation have been up-

---

[6] (A) Statutes embracing violations of municipal ordinances generally. E. g.: Ariz. Rev. Code (Struckmeyer, 1928) §§ 382, 442, (three months); Neb. Comp. Stat. (1929) §§ 18–201, 18–205 (three months); New Mex. Stat. (Courtright, 1929) §§ 90–402 (66), 90–901, 90–910, 79–322, (three months); Nev. Comp. Laws (Hillyer, 1929) §§ 1128 (1), 1167, (six months); Wyo. Rev. Stat. (Courtright, 1931) §§ 22–402, 22–409, (three months).

(B) Statutes commanding summary trial for specified offenses. E. g.: N. J. Comp. Laws (1924 Supp.), §§ 135–63 (3), 135–76 (operating motor vehicle under influence of liquor; six months; see *Klinges* v. *Court of Common Pleas*, 130 Atl. 601); N. J. Comp. Laws (1930 Supp.) § 160–222, 3 (disorderly persons act; three months penalty, see N. J. Laws 1898, p. 954, increased to one year by laws 1910, p. 37); Pa. Stat. Ann. (Purdon, 1931), § 18–2033 (vagrancy; six months); § 18–2832 (frequenting of public places by thieves, for unlawful purpose; three months).

The most extensive elimination of the jury prevails in New York. The three-judge Court of Special Sessions, sitting without a jury, has jurisdiction to try all misdemeanors [i. e., offenses punishable with one year's imprisonment, N. Y. Penal Law (1909), § 1937] com-

held many times in the state courts, despite objections to the denial of a jury trial.[7] In England many acts of Parliament now in force, authorizing ninety day punishments, call for summary trials.[8]

This record of statute and judicial decision is persuasive that there has been no such change in the generally accepted standards of punishment as would overcome the presumption that a summary punishment of ninety days' imprisonment, permissible when the Constitution was adopted, is permissible now. Respondent points to no

mitted in New York City. Inferior Criminal Courts Act of the City of New York, N. Y. Laws 1910, c. 659, § 31 (1), (4). A city magistrate sitting alone may try certain misdemeanors, including violations of N. Y. Penal Law (1909), § 1566, proscribing the sale of street railroad transfer tickets, Inferior Criminal Courts Act, § 43 (d), added by Laws 1915, c. 531. Other legislation, state-wide in application, provides for summary trial and conviction of persons guilty of disorderly conduct (six months), N. Y. Penal Law (1923), §§ 723, 724; of persons frequenting a public place for purposes of crime (100 days), N. Y. Code Crim. Proc., § 898–a; of "vagrants" (one year in jail; three years in correctional institution), N. Y. Code Crim. Proc., §§ 891, 891–a.

[7] In *Wilmarth* v. *King*, 74 N. H. 512; 69 Atl. 889 (1908), the court approved a statute authorizing six months' imprisonment as not exceeding in magnitude the pre-Revolutionary punishments. In the following cases convictions under statutes authorizing commitment for three months or more were upheld and the right to jury trial held properly denied. *Bray* v. *State*, 140 Ala. 172; 37 So. 250 (1903); *State* v. *Parker*, 87 Fla. 181; 100 So. 260 (1924); *State* v. *Glenn*, 54 Md. 572 (1880); *State* v. *Broms*, 139 Minn. 402; 166 N. W. 771 (1918); *State* v. *Anderson*, 165 Minn. 150; 206 N. W. 51 (1925); *Bell* v. *State*, 104 Neb. 203; 176 N. W. 544 (1920); *State* v. *Kacin*, 123 Neb. 64; 241 N. W. 785 (1932); *People ex rel. St. Clair* v. *Davis*, 143 App. Div. 579; 127 N. Y. S. 1072 (1911); *People* v. *Harding*, 115 Misc. 298; 189 N. Y. S. 657 (1921); *Byers* v. *Commonwealth*, 42 Pa. St. 89 (1862).

[8] Thirty-seven offenses are listed in Stone's Justices' Manual (66th ed. 1934), Appendix of Table of Punishments for Offences Cognizable

contrary evidence. We cannot say that this penalty, when attached to the offense of selling second-hand goods without a license, gives it the character of a common law crime or of a major offense, or that it so offends the public sense of propriety and fairness as to bring it within the sweep of a constitutional protection which it did not previously enjoy.

Although we conclude that respondent's demand for a jury trial was rightly denied, there must be a new trial because of the prejudicial restriction, by the trial judge, of cross-examination by respondent. The testimony of five prosecution witnesses was the sole evidence of the acts of respondent relied on to establish the doing of business without a license. These acts were the sale by her, on each of three occasions, to one or another of the witnesses, of the unused portion of a round trip railway passenger ticket from New York to Washington. Three of the five, a man and his wife and another, were employed by the Railroad Inspection Company as investigators. The other two were company police of the Baltimore & Ohio Railroad. All were private police or detectives, apparently acting in the course of their private employment. Common experience teaches us that the testimony of such witnesses, especially when uncorroborated, is open to the

Under the Summary Jurisdiction, pp. 1904–1945. E. g. Frauds by Workmen Act, 1777, 17 Geo. III, c. 56, § 1; Merchandise Marks Act, 1887, 50 & 51 Vict., c. 28, § 2; Agricultural Marketing Act, 1933, 23 & 24 Geo. V, c. 31, § 6 (5).

Several of the statutes specify larger penalties, but by § 17 of the Summary Judicature Act, 1879, 42–43 Vict., c. 49, except in cases of assault, sentences exceeding three months cannot be administered unless the accused has been offered the choice of trial by jury.

suspicion of bias, see *Gassenheimer* v. *United States*, 26 App. D. C. 432, 446; *Moller* v. *Moller*, 115 N. Y. 466, 468; 22 N. E. 169; *People* v. *Loris*, 131 App. Div. 127, 130; 115 N. Y. S. 236; *Sopwith* v. *Sopwith*, 4. Sw. & Tr. 243, 246-7; Wigmore, Evidence (2d ed. 1923) §§ 949, 969, 2062, and that their cross-examination should not be curtailed summarily, see *State* v. *Diedtman*, 58 Mont. 13, 24; 190 Pac. 117, especially when it has a direct bearing on the substantial issues of the case.

The defense was a suggested mistaken identity of respondent and an alibi, that at the times mentioned she was confined to her bed by illness, at her home in Newark, New Jersey. A number of questions on cross-examination by respondent were aimed at showing mistaken identity and at testing credibility. She asked one witness whether respondent had been pointed out to him. She asked another whether he had any trouble in "knowing" the respondent at the trial, and whether he had seen her before the date of the alleged sale of tickets to which he testified. All these questions were excluded, as were others which were proper, since they might have established contradiction in the testimony of the witnesses for the prosecution.

Other questions, which were relevant to the issue and obviously proper tests of credibility, were excluded. The woman witness had testified that one of the sales took place in the presence of her husband, and of the two railroad police witnesses. On cross-examination she could not remember whether anyone beside her husband was present. Yet respondent was not permitted to ask the husband whether the railroad police witnesses were

known to him or to ask one of the latter whether he knew the husband and wife before the date of the alleged sale. The court instructed one of the police officers not to answer the question whether the husband had come to Washington by prearrangement. Like questions addressed to the husband and his wife were excluded. The respondent was similarly prevented from making inquiries as to corroborative detail, such as the time of day when the witnesses arrived in Washington on the dates of the alleged sales, and the place of residence of a witness, see *Alford* v. *United States,* 282 U. S. 687. In the circumstances of the case, these questions may have had an important bearing on the accuracy and truthfulness of the testimony of the prosecuting witnesses. We do not stop to give other examples of the summary curtailment of all inquiry as to matters which are the appropriate subject of cross-examination.

The extent of cross-examination rests in the sound discretion of the trial judge. Reasonable restriction of undue cross-examination, and the more rigorous exclusion of questions irrelevant to the substantial issues of the case, and of slight bearing on the bias and credibility of the witnesses, are not reversible errors. But the prevention, throughout the trial of a criminal case, of all inquiry in fields where cross-examination is appropriate, and particularly in circumstances where the excluded questions have a bearing on credibility and on the commission by the accused of the acts relied upon for conviction, passes the proper limits of discretion and is prejudicial error. See *Alford* v. *United States, supra.*

The judgment of the Court of Appeals will be affirmed, that of the police court reversed, and the case will be

remanded with instructions for a new trial without a jury.

*Affirmed.*

Separate opinion of MR. JUSTICE McREYNOLDS and MR. JUSTICE BUTLER.

MR. JUSTICE BUTLER and I approve the conclusion of the Court of Appeals concerning respondent's right to trial by jury; also we accept the supporting opinion announced there as entirely adequate.

The Sixth Amendment—In all criminal prosecutions, the accused shall enjoy the right to a speedy, and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

The Seventh Amendment—In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved and no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law.

We cannot agree that when a citizen is put on trial for an offense punishable by 90 days in jail or a fine of $300.00, the prosecution is not criminal within the Sixth Amendment. In a suit at common law to recover above $20.00, a jury trial is assured. And to us, it seems improbable that while providing for this protection in such a trifling matter the framers of the Constitution intended

that it might be denied where imprisonment for a considerable time or liability for fifteen times $20.00 confronts the accused.

In view of the opinion just announced, it seems permissible to inquire what will become of the other solemn declarations of the Amendment. Constitutional guarantees ought not to be subordinated to convenience, nor denied upon questionable precedents or uncertain reasoning. See *Boyd* v. *United States,* 116 U. S. 616, 635; *In re Debs,* 158 U. S. 564, 594.

We concur in the conclusion of the Court concerning unfairness of the trial and the necessity for a new one.

This cause shows the grave danger to liberty when the accused must submit to the uncertain judgment of a single magistrate.