Samuel A. Spiegel, J.
This is a habeas corpus proceeding instituted by the relator, who was sentenced in the Supreme Court for a misdemeanor of petit larceny to an indefinite period in the New York City Reformatory, which may mean incarceration up to three years, pursuant to section 75.20 of the Penal Law. Relator contends that this is illegal, pursuant to Matter of Hogan v. Rosenberg (24 N Y 2d 207); Duncan v. Louisiana (391 U. S. 145), and Matter of Gault (387 U. S. 1). This is a challenge to the constitutionality of his sentence.
Relator is a young adult, more than 16 and less than 21 years of age, who was indicted on two counts, for the felony of robbery in the second degree and the misdemeanor of petit larceny. He pleaded guilty to the crime of petit larceny to cover the entire indictment. Relator now contends that for petit larceny, Matter *192 of Hogan v. Rosenberg (supra) and Duncan v. Louisiana (supra) limit sentences in the Criminal Court of New York City to no more than one year and thus for the same crime the sentence in the Supreme Court should likewise be so limited. He contends that this disparity in sentence for those charged with the same crime within the same county, regardless of the jurisdiction of the court, is unfair, illegal, discriminatory, a violation of due process and of his constitutional rights.
The issue is whether the constitutional rights of the relator have been violated because he received an indeterminate reformatory sentence in the Supreme Court for the misdemeanor of petit larceny, which may result in a maximum three-year incarceration, particularly since for the same crime in the jurisdiction of the Criminal Court the maximum sentence is limited to only one year.
Further, relator contends section 75.00 of the Penal Law, authorizing imposition of an indeterminate reformatory sentence up to three years upon a young adult under 21, is discriminatory and unconstitutional because a young adult over 21 can be sentenced only to a maximum term of one year for the same misdemeanor.
Section 6 of article I of the State Constitution, chapter II of title IV of part IV of the Code of Criminal Procedure, and subdivisions (a) and (b) of section 32 of the New York City Criminal Court Act permit the Grand Jury to choose one of two methods of handling misdemeanors. The Grand Jury may indict for the misdemeanor, thus insuring a jury trial in the Supreme Court where a young adult defendant may be subjected to a three-year sentence. On the other hand, if the District Attorney files an information on that same misdemeanor, whereby the matter will be prosecuted in the Criminal Court of the City of New York, the maximum sentence is limited to one year.
Petitioner herein was free to request a jury and to proceed to trial upon the robbery, second degree, and petit larceny charges contained in the indictment. If convicted upon the robbery count, he faced imprisonment up to 15 years. Prior thereto, he had applied for youthful offender treatment which had been disapproved. In applying for youthful offender treatment, he agreed to waive a jury trial. His waiver in that instance did not foreclose his right to a jury at his trial in the Supreme Court on the robbery and petit larceny counts. He voluntarily pleaded guilty to the misdemeanor of petit larceny to cover all the counts of the indictment, which included the count of robbery in the second degree. The court believed that *193 defendant, between 16 and 21, could be rehabilitated and sentenced him to the New York City Reformatory for an indefinite term.
The avowed purpose of the article 75 reformatory sentence, as stated in the Commission Staff Notes, is: “To provide education, moral guidance and vocational training for young offenders who are badly in need of such instruction and counsel. ’ ’
An indeterminate sentence to a State reformatory may be up to four years. An indeterminate sentence to a city reformatory may be up to three years.
The philosophy justifying confinement in a penal institution is rehabilitation and not punitive vengeance. The American system of penology affords a more valid and profound significance than the exaction by society of a pound of flesh on repayment for commission of crime.
Under any circumstances, it is abhorrent to cage a human being and bring his life to a useless, nonproductive, and deteriorating standstill while the clock ticks on. It is a complete waste of man’s most precious and coveted commodity — time. Accordingly, we are constrained hopefully to provide a constructive and meaningful rehabilitative program while he is incarcerated, until a more effective alternative is found which will successfully stimulate motivation to change from a potential hostile, aggressive and professional criminal career.
Enlightened penologists agree that punishment by incarceration is stultifying, self-destructive and inimical to the best interests of society since it merely serves to aggravate crime. On the other hand, rehabilitation is the only sound basis for incarceration, and, accordingly, the length of a sentence must be interrelated therewith. "With this in mind, the Legislature conceived the indefinite sentence to the reformatory because it believed that there is greater chance and hope for successful rehabilitation through education, training and guidance of impressionable youth, before the demoralizing and deteriorating process of exposure to prison life and hardened prison criminals take their toll. The provocative and erosive problem of youthful recidivism can best be thwarted and rebuffed by an appropriate and effective rehabilitation program. (People v. Wilson, 17 N Y 2d 40.)
In Matter of Hogan v. Rosenberg (24 N Y 2d 207, supra) the issue was raised as to whether section 40 of the New York City Criminal Court Act, providing for trial without jury of misdemeanors, for which punishment is not more than one year in prison, is constitutional, since persons outside New York City, charged with misdemeanors, have the right to a trial by jury. *194 Our Court of Appeals, consonant with Duncan v. Louisiana (391 U. S. 145, supra) indicated that the constitutional right to a trial by jury refers only to ‘ ‘ serious crimes ’ ’ and not to “ petty ” crimes. In determining whether a crime is serious or not, the penalty authorized is of major relevance. (District of Columbia v. Clawans, 300 U. S. 617.) The penalty authorized by the law of the locality may be taken as a gauge of its social and thoughtful judgment of the crime in question. Petty offenses have a defined meaning classified as such with the penalties attached to them. They cease to be petty when the imprisonment is longer than one year. (People v. Bellinger, 269 N. Y. 265.) However, for young adults, between 16 and 21, our statute (Penal Law, § 75.20) authorizes a New York City Reformatory indeterminate sentence up to three years.
The Court of Appeals in the Rosenberg case (supra) stated generally that those crimes denominated as misdemeanors in this State are not crimes to be characterized as serious. Continuing on, our Court of Appeals held that though a defendant charged with an identical misdemeanor elsewhere in the State of New York is entitled to exercise the right of a trial by jury, defendants charged with identical misdemeanors in New York City may be validly tried without a jury. Thus, when all in one class are treated alike, then territorial discrimination as between different States and even between different subdivisions of the same State is not of itself violative of the equal protection clause. All young adult defendants between 16 to 21 are treated alike in the Supreme Court. Sentences vary in each case, dependent upon the facts and circumstances involved and the discretion exercised in the wisdom of the court. Further, in Matter of Hogan v. Rosenberg (supra), only a misdemeanor charge in the Criminal Court was involved, wholly unlike the situation at bar.
At page 217 in Matter of Hogan v. Rosenberg (supra) the court said:
“ ‘ “ [Tjhere is nothing in the Constitution to prevent any State from adopting any system of laws of judicature it sees fit for all or part of its territory. If the State of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties, and the common law and its method of procedure for the rest of the State, there is nothing in the Constitution of the United States to prevent its doing so. This would not, of itself, withm the meaning of the Fourteenth Amendment, be a denial to any person of the equal protection of the laws. * * * It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes *195 in the same place and under like circumstances ” ’ ” (emphasis added).
‘1 ‘ The Fourteenth Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States separated only by an imaginary line. On one side of this line there may be a right of trial by jury, and on the other side no such right. Each State prescribes its own modes of judicial proceeding. If diversities of laws and judicial proceedings may exist in the several States without violating the equality clause in the Fourteenth Amendment, there is no solid reason why there may not be such diversities in different parts of the same State ’ (Missouri v. Lewis, 101 U. S. 22, 31 [1879], quoted at 346 U. S., p. 551, n. 6). (See, also, Barbier v. Connolly, 113 U.S. 27.) ”
The court continued at page 220: “As we have already indicated in the companion case that a crime must be characterized as serious when the authorized punishment includes a possible term of imprisonment in excess of one year, the possibility of a young adult receiving a reformatory sentence creates an anomalous situation. . Under the new Penal Law, an adult convicted of a misdemeanor can in no event receive a sentence greater than one year and, therefore, as to him, under the rationale of the companion case, the crime is petty. A young adult, however, convicted of the same crime may, pursuant to article 75, receive a reformatory sentence of four years and, therefore, as to the young adult the crime is serious.
“ The impact of this conclusion upon the New York City Criminal Court as well as the act under which it operates may be assessed from two viewpoints. In one sense, we could affirm the determination of Special Term that section 40 of the New York City Criminal Court Act is unconstitutional to the extent that it authorizes the prosecution of a young adult who is subject to article 75 without affording the right to a jury trial. This view would require the State to afford jury trials to all persons between the ages of 16 and 21 charged with any crime including any act for which an adult would be subject to a term of imprisonment greater than 15 days (see Penal Law, § 55.10).”
In both Duncan v. Louisiana (supra) the Supreme Court of the United States, and in Matter of Hogan v. Rosenberg (supra) our Court of Appeals directed that those charged with a “ serious ” crime are to be afforded a jury trial.
However, indefinite reformatory sentences per se were not declared illegal. The indefinite reformatory sentence was declared invalid .in the Criminal Court of the City of New York *196 since there is no procedural machinery available for a jury trial.
Conversely, where there is procedural machinery which affords a jury trial, as in the Supreme Court, then an indeterminate sentence in excess of one year does not violate the requirements mandated by the Duncan and Rosenberg decisions.
Notwithstanding his plea of guilty only to the second count, the misdemeanor of petit larceny, the defendant, charged with the serious crime of robbery in the second degree in the first count, was entitled to a jury trial on both the felony and misdemeanor counts.
In conclusion, to permit one indicted for a serious felony to plead guilty, knowingly and voluntarily, to a misdemeanor, for his own self-serving gain, and then to grant his application for freedom, based on an unfounded analogy to the Criminal Court where the same misdemeanor would entail a lesser sentence, would make a mockery and travesty of our accepted processes in criminal cases. (People v. Wilson, 17 N Y 2d 40, supra.)
The principles of the Duncan and Hogan cases (supra) do not indicate a contrary result herein.
Accordingly, the sentence by a Justice of the Supreme Court of the relator as a young adult is valid and the challenge to its constitutionality is denied on all grounds. The writ is dismissed.