Delmis DONTA, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 92–CA–696–DG.

Court of Appeals of Kentucky.

July 23, 1993.

Theodore H. Amshoff, Jr., Louisville, for appellant.

Chris Gorman, Atty. Gen., Robert W. Miller, Sp. Asst. Atty. Gen., Grayson, Elizabeth A. Myerscough, Asst. Atty. Gen., Frankfort, for appellee.

Before LESTER, C.J., and GUDGEL and SCHRODER, JJ.

GUDGEL, Judge:

This case is before us on discretionary review from an order entered by the Boyd Circuit Court affirming a judgment of the Boyd District Court. In his absence, appellant was tried and adjudged guilty of second-degree official misconduct. *See* KRS 522.030. On appeal, appellant contends that his trial *in absentia* deprived him of certain constitutional due process rights, as well as of his right to adduce certain exculpatory evidence and evidence regarding the absence of *mens rea.* Appellant also contends that the statute under which he was prosecuted is unconstitutional. We disagree with all of appellant's contentions. Hence, we affirm.

A fairly detailed recitation of relevant facts is a necessary prerequisite to resolving the issues on appeal. On September 14, 1990, a criminal summons was issued charging appellant with the offense of second-degree official misconduct stemming from his alleged knowing failure, as super-intendent of the Boyd County Schools, to perform certain required duties relating to the accurate reporting of the number of pupils enrolled in classes in the Boyd County School system. On October 3, appellant entered a not guilty plea at his arraignment.

On the court's own motion, a jury trial was set for December 13. Subsequently, appellant made a motion seeking a three-month continuance of the trial on the ground that he needed ample opportunity in which to examine and review the documentary evidence upon which the charge against him was based. The court sustained appellant's motion, and the case was reassigned for trial on April 9, 1991. In February 1991, however, appellant again made a motion for a continuance on the ground that he wanted to attend an out-of-state conference which was scheduled around the same time as his trial, and he subsequently filed a motion for a continuance based upon pretrial publicity. The court granted appellant's motion and continued the scheduled trial until May 6. On April 24, appellant filed yet another motion for a continuance, alleging that a delay was necessitated by health problems. An affidavit subsequently filed by appellant indicated that he had undergone surgery in Cleveland on April 8, and that he was scheduled for additional surgery on May 13. The court again postponed the scheduled trial, eventually rescheduling it for August 12. Predictably, on August 1 appellant filed yet another motion for a continuance, claiming that his high blood pressure prevented him from standing trial. This motion was accompanied by a physician's letter, dated July 31, which indicated that the trial should be postponed for at least three months. Although the court once again postponed the trial, rescheduling it for October 21, it ordered appellant to provide the commonwealth with a comprehensive medical release authorization which permitted discovery of any desired information relating to appellant's health problems. Meanwhile, appellant's counsel filed motions seeking the court's permission to withdraw as counsel on the ground that appellant refused to assist or cooper-

ate with him in preparing a defense. These motions were denied.

Next, appellant failed to appear on the scheduled October 21 trial date, having informed his counsel only that morning that he would not appear. Once again, his attorney moved for a continuance and renewed his motion for permission to withdraw as appellant's counsel. The commonwealth, however, made a motion asking the court to conduct the scheduled trial in appellant's absence. The court granted both of defense counsel's motions, as well as the commonwealth's motion, and set October 29 as the date for conducting a trial *in absentia.*

On October 22, appellant's present counsel telephoned the commonwealth's attorney and asked him to agree to yet another continuance. This request was refused on the ground that appellant had never properly documented his claim that his health conditions were so severe as to preclude him from standing trial. The commonwealth's attorney received no further communication from appellant or his attorney prior to October 29. On the afternoon of October 28, however, appellant's son hand delivered to the circuit clerk a letter, dated October 27, indicating that appellant would be undergoing surgery on both October 28 and November 14, and requesting that the trial be delayed until after completion of these surgeries. Nevertheless, on October 29 the court conducted a bench trial, finding that appellant's absence was voluntary, and that he had voluntarily waived his rights to a trial by jury and to representation by counsel. At the conclusion of the bench trial, the court adjudged appellant guilty of the charged offense.

On November 5, appellant's counsel filed a timely motion to vacate the conviction and to grant appellant a new trial. Both the hearing on that motion and appellant's sentencing hearing were set for November 13. Appellant and his counsel personally appeared for the November 13 hearing. At the conclusion of this hearing, the court denied appellant's motion to vacate and for a new trial, and sentenced him to pay a $250 fine and costs. This appeal followed.

First, appellant contends that the court denied him due process by conducting a trial in his absence, and by denying him the right to effective assistance of counsel and to a jury trial. We disagree.

■ Appellant's due process contention is three pronged. First, he urges that he was denied his constitutional right to confront his accusers, premised on the assertion that the court erred by concluding that he voluntarily waived his right to be present at trial by choosing not to appear.

■ We find no merit in appellant's contention. RCr 8.28(4) specifically authorizes a trial court to conduct a misdemeanor trial in a defendant's absence. Moreover, although the commonwealth has the burden of proving that a defendant's absence from trial was intentional, knowing, and voluntary, it may be inferred that a defendant's absence met this standard where it is shown that such defendant had knowledge of the trial date and failed to appear. *McKinney v. Commonwealth,* Ky., 474 S.W.2d 384 (1971). Further, RCr 8.28(4) is clearly not unconstitutional. *See McKinney, supra.*

Here, appellant did not personally appear in court on any of the five dates scheduled for trial between the date of his arraignment and the date of his sentencing hearing. On each of the scheduled trial dates prior to October 21, appellant presented through his counsel an excuse for his inability to appear and requested a continuance of his trial date. On October 21, however, appellant neither appeared nor offered any excuse for his failure to do so. Therefore, pursuant to *McKinney, supra,* the court would have been justified in conducting a bench trial in appellant's absence on October 21. However, in an obvious effort to give appellant every opportunity to appear, the court postponed the trial for yet another eight days, while simultaneously permitting appellant's original counsel to withdraw from representation.

Appellant evidently was promptly made aware of the rescheduled trial date, because his present counsel phoned the prosecutor on the very next day and asked him

to agree to yet another continuance. There is nothing in the record to indicate that any mention was made during this conversation of any health problems which were so severe as to preclude appellant from appearing for trial on October 29. Further, appellant's unverified and uncorroborated letter of October 27 does not indicate that the surgery allegedly scheduled for October 28 could not have been scheduled for some other day. It certainly may be inferred that this surgery was not inordinately serious, given the record's showing that appellant returned home the day after the alleged surgery and then personally appeared for his sentencing hearing on November 13, even though he had earlier claimed that he also had surgery scheduled for November 14. Appellant's last-minute effort to delay the October 29 trial was consistent with the sequence of events which had customarily occurred as prior trial dates had approached.

Given appellant's previous pattern of conduct whenever a trial date approached, his failure to cooperate with or assist his counsel in preparing for trial, and his unexcused failure to appear for trial on October 21, we perceive no abuse of discretion in the court's finding that appellant intentionally, knowingly, and voluntarily waived his right to be present for his trial. On the contrary, after considering all of the relevant circumstances, we are of the opinion that the record supports a finding that appellant consciously and voluntarily intended to be absent from his trial. That being so, we conclude that the court did not deny him his constitutional right to confront his accusers. *See Burns v. Commonwealth,* Ky.App., 655 S.W.2d 497 (1983).

■ Next, appellant argues that he was denied his constitutional right to be represented by counsel because the court permitted his counsel to withdraw on October 21 without leaving him sufficient time to employ new counsel and to prepare an adequate defense by October 29. The simple answer to this contention lies in the fact that neither appellant nor his present counsel appeared for the October 29 trial or filed a written motion seeking a continuance on this ground. Moreover, neither the commonwealth nor the court had any duty to be sure that appellant had employed counsel to be present at his trial. Indeed, there was no contention that appellant's first counsel was not entitled to withdraw, or that appellant was indigent and unable to employ his own attorney. For these reasons, we conclude that there is no merit to appellant's argument that the court somehow denied him his right to counsel. On the contrary, as far as the record shows, apparently appellant chose to waive his right to have counsel present for his trial on October 29.

■ As the third prong of his due process claim, appellant contends that he was improperly denied his constitutional right to a jury trial. Again, we disagree.

■ True enough, KRS 29A.270 guarantees defendants jury trials in all criminal prosecutions, including those for even the most minor types of offenses. However, by stating that a "request" for a jury trial may be made at any time prior to the time a case is called for trial, this statute by implication imposes a clear burden on the accused to make a demand for a jury trial.

■ Here, appellant never requested a jury trial. Although RCr 9.26(1) mandates that "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing," we are of the opinion that in the absence of a request for a jury trial pursuant to KRS 29A.270, this rule should not be construed as intending to mandate that a jury trial must be conducted in every criminal case no matter how minor the charged offense might be. Indeed, Section 7 of the Kentucky Constitution has long been construed as guaranteeing an accused the right to a jury trial only to the extent that such a right existed at common law. *See Wendling v. Commonwealth,* 143 Ky. 587, 137 S.W. 205 (1911). Further, our courts have long recognized that there is no constitutional right to a jury trial in cases involving petty offenses because no such right existed in such cases at common law. *See City of Mt. Sterling v. Holly,* 108 Ky. 621, 57 S.W. 491 (1900).

It follows, therefore, that if the offense with which appellant was charged was not one which was required to be tried by a jury at common law, the court did not err here by failing to conduct a jury trial.

At common law, a breach of public duty such as that involved here was indictable as a misdemeanor offense. *See* James M. Roberson, *Kentucky Criminal Law and Procedure* § 12 (2d ed. 1927). However, when the breach of public duty was first statutorily proscribed in this jurisdiction, the penalty provided was limited to a fine and forfeiture of the office. *See* KRS 61.-170. Further, similar offenses at common law were also classified and penalized as misdemeanors rather than as felonies. *See* 63A Am.Jur.2d *Public Officers and Employees* § 412 (1984). Additionally, once this jurisdiction statutorily proscribed the commission of malfeasance, misfeasance and/or nonfeasance by executive officers, the penalties were limited to those which were statutorily imposed, regardless of whether such indictments were based upon common law or statutes. *See Commonwealth v. Rowe*, 112 Ky. 482, 66 S.W. 29 (1902).

Thus, unless the penalty for a violation of KRS 522.030 (a $250 fine and/or ninety days in jail) is so severe as to have required an accused to have been tried by a jury at common law for such an offense, it follows that the court in the instant proceeding did not err by denying appellant a jury trial given the fact that appellant failed to avail himself of his statutory right to request a jury trial. We have concluded that no such right existed at common law.

For purposes of the federal constitution, the issue before us was addressed by the United States Supreme Court as early as 1937 in *District of Columbia v. Clawans*, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937). In that case, in determining whether a ninety-day penalty mandated a jury trial, the court noted as follows:

We are thus brought to the question whether the penalty, which may be imposed for the present offense, of ninety days in a common jail, is sufficient to bring it within the class of major offenses, for the trial of which a jury may be demanded. . . .

If we look to the standard which prevailed at the time of the adoption of the Constitution, we find that confinement for a period of ninety days or more was not an unusual punishment for petty offenses, tried without a jury. Laying aside those for which the punishment was of a type no longer commonly employed, such as whipping, confinement in stocks, and the like, and others, punished by commitment for an indefinite period, we know that there were petty offenses, triable summarily under English statutes, which carried possible sentences of imprisonment for periods from three to twelve months. At least sixteen statutes, passed prior to the time of the American Revolution by the Colonies, or shortly after by the newly created states, authorized the summary punishment of petty offenses by imprisonment for three months or more. And at least eight others were punishable by imprisonment for six months.

In the face of this history, we find it impossible to say that a ninety-day penalty for a petty offense, meted out upon a trial without a jury, does not conform to standards which prevailed when the Constitution was adopted, or was not then contemplated as appropriate notwithstanding the constitutional guarantee of a jury trial. . . .

. . . .

A number of states have continued in force statutes providing for trial, without a jury, of violations of municipal ordinances, and sundry petty statutory offenses, punishable by commitment for three months or more. Convictions under such legislation have been upheld many times in the state courts, despite objections to the denial of a jury trial. In England many acts of Parliament now in force, authorizing ninety day punishments, call for summary trials.

This record of statute and judicial decision is persuasive that there has been no such change in the generally accepted standards of punishment as would overcome the presumption that a summary

punishment of ninety days' imprisonment, permissible when the Constitution was adopted, is permissible now. (Footnotes omitted.)

*Id.* 300 U.S. at 625–29, 57 S.Ct. at 662–64.

Subsequently, in *Duncan v. State of Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), the court again addressed this issue in the context of a Fourteenth Amendment challenge to a state procedure denying a jury trial. The Court stated in relevant part as follows:

So-called petty offenses were tried without juries both in England and in the Colonies and have always been held to be exempt from the otherwise comprehensive language of the Sixth Amendment's jury trial provisions. There is no substantial evidence that the Framers intended to depart from this established common-law practice, and the possible consequences to defendants from convictions for petty offenses have been thought insufficient to outweigh the benefits to efficient law enforcement and simplified judicial administration resulting from the availability of speedy and inexpensive nonjury adjudications. These same considerations compel the same result under the Fourteenth Amendment. Of course the boundaries of the petty offense category have always been ill-defined, if not ambulatory. In the absence of an explicit constitutional provision, the definitional task necessarily falls on the courts, which must either pass upon the validity of legislative attempts to identify those petty offenses which are exempt from jury trial or, where the legislature has not addressed itself to the problem, themselves face the question in the first instance. In either case it is necessary to draw a line in the spectrum of crime, separating petty from serious infractions. This process, although essential, cannot be wholly satisfactory, for it requires attaching different consequences to events which, when they lie near the line, actually differ very little.

In determining whether the length of the authorized prison term or the seriousness of other punishment is enough in itself to require a jury trial, we are counseled by *District of Columbia v. Clawans, supra,* to refer to objective criteria, chiefly the existing laws and practices in the Nation. In the federal system, petty offenses are defined as those punishable by no more than six months in prison and a $500 fine. In 49 of the 50 States crimes subject to trial without a jury, which occasionally include simple battery, are punishable by no more than one year in jail. Moreover, in the late 18th century in America crimes triable without a jury were for the most part punishable by no more than a six-month prison term, although there appear to have been exceptions to this rule. (Footnotes omitted.)

*Id.* 391 U.S. at 160–61, 88 S.Ct. at 1453–54.

In light of the relevant authorities, it is clear that at common law the misdemeanor offense of breach of public duty, which in Kentucky has been codified in statutes such as KRS 61.170 and KRS 522.030, was considered to be a petty offense which was exempt from the protections afforded by the constitutional right to a jury trial, since the penalty for the offense did not exceed ninety days. Thus, the offense with which appellant was charged does not entitle him to the protections afforded by Section 7 of the Kentucky Constitution and RCr 9.26(1). It follows, therefore, that the court did not err by denying appellant a jury trial. However, we note that had appellant actually availed himself of his statutory right to request a jury trial, the result in this matter might have been different.

■ Next, appellant contends that he was denied his right to show that he lacked the *mens rea* necessary to commit the charged offense. However, appellant chose not to appear for his trial or to testify in his own defense. Further, he did not attempt to have his attorney appear or to adduce testimony from witnesses bearing upon the issue of his *mens rea.* Given the fact that appellant and his attorney were voluntarily absent from the trial, appellant is hardly in a position to argue that the court somehow denied his right to testi-

**726**

fy or to adduce evidence as to the *mens rea* issue.

■ Next, appellant argues that the prosecutor denied him a fair trial by failing to introduce certain exculpatory evidence which the prosecution had in its possession. We disagree.

■ A prosecutor has no duty to introduce exculpatory evidence favorable to the accused as part of the commonwealth's evidence in chief at trial. Indeed, Rule 3.8(c) of the Kentucky Rules of Professional Conduct (SCR 3.130), cited by appellant, only requires the prosecutor to timely disclose such exculpatory information to the accused. Here, as appellant obtained the information included in the affidavit of Paul Rucker, there is no dispute that appellant was fully aware of the information included therein. Thus, there was no violation of Rule 3.8(c). Further, we note that although Rucker's testimony might have helped appellant's case, it certainly would not have conclusively established that appellant was unaware that the class size limits were regularly being exceeded without exemptions being sought or obtained. Moreover, we reject appellant's claim that by subpoenaing Rucker, the prosecutor acquired a duty to call him as a witness, both because this assertion is not supported by the record, and because the prosecutor had no legal or ethical duty to call Rucker as a witness.

■ Finally, appellant contends that the statute under which he was prosecuted was unconstitutional and, hence, that his conviction cannot stand. We disagree.

True enough, in *Rose v. Council for Better Education, Inc.*, Ky., 790 S.W.2d 186 (1989), the supreme court declared the entire school system unconstitutional, including the statutes and regulations which appellant violated. However, the court did not specifically strike down the statute under which appellant was prosecuted, and the court withheld finality as to its declaration of unconstitutionality "until 90 days after the adjournment of the General Assembly, *sine die*, at its regular session in 1990." At the conclusion of that session,

the statute under which this action was prosecuted was, in relevant part, reenacted without change as part of the Education Reform Act. Thus, technically, the statute was never effectively declared unconstitutional and it never lost its legal efficacy. Moreover, we find no basis for reaching a contrary conclusion, and appellant cites us to none.

Because the applicable statute was never effectively and finally declared unconstitutional, appellant was never relieved of his legal duty to comply with that statute. Thus, there is no merit to appellant's contention that he was found guilty of violating a statute which lacked legal efficacy.

The court's judgment is affirmed.

All Concur.