STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
RICHARD OWENS, JR., DEFENDANT-APPELLANT.

Argued March 4, 1969—Decided June 4, 1969.

*Mr. Morton Stavis* argued the cause for appellant (*Mr. Daniel Crystal,* on the brief; *Mr. Irvin L. Solondz,* attorney).

*Mr. Donald S. Coburn,* Assistant Prosecutor, argued the cause for respondent (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney).

The opinion of the court was delivered by

WEINTRAUB, C. J. Defendant was convicted in the Municipal Court of Newark on three charges of assault and battery in violation of the disorderly persons statute and of a

further charge of resisting arrest in violation of a local ordinance. He appealed to the County Court where upon a trial *de novo, R. R.* 3:10–10(*a*), he was again convicted on all charges. Both courts imposed the same sentences: six months imprisonment on three of the convictions and three months on the fourth, execution suspended, with defendant placed on probation for nine months on each conviction. The sentences were consecutive, so that the total of the suspended jail sentences was 21 months and the total probation period was 36 months. Defendant was ordered to pay $1.00 per week for an 18-month period. The Appellate Division affirmed, 102 *N. J. Super.* 187 (1968), and we granted defendant's petition for certification, limited to the issue of the right to trial by jury.[1] 52 *N. J.* 533 (1968).

The four charges emerged from a single setting. The State's version, accepted by the courts below, may be described very briefly. Defendant lived without matrimony with a woman by whom he had a child. Two police officers, responding to a call, found the woman somewhat hysterical, pleading for help to enter her apartment to obtain her child and her clothing. The officers sought to talk with defendant, but a fracas ensued with defendant committing a simple assault and battery upon both officers and upon the infant, who was but three weeks old, and resisting arrest.

The charges were tried together. As to the charge of assault and battery, which is a disorderly persons offense, *N. J. S.* 2A:170–26, the maximum authorized punishment at the time defendant was tried was one year in jail and a $1,000 fine. *N. J. S.* 2A:169–4. Since then the authorized maximum has been reduced to six months and a fine of $500. *L.* 1968, c. 113. The authorized maximum for resisting arrest in violation of the ordinance was three months in jail and a fine of $500.

Under our practice, trial by jury is not accorded one charged with a disorderly persons offense or with a violation

---

[1] The report erroneously fails to reveal this limitation upon the grant of the petition.

of a municipal ordinance. A disorderly persons offense (and so too an ordinance violation) is deemed to be a "petty offense" rather than a "crime" within the provisions of our State Constitution relating to indictment (*Art.* I, ¶ 8) and trial by jury (*Art* I, ¶ 9). The maximum punishment authorized for a petty offense is below that authorized for crime, and a conviction for a petty offense carries none of the consequential civil disabilities which follow upon a conviction for crime. We repeat from *In re Buehrer,* 50 *N. J.* 501, 517–519 (1967):

"In our State 'crimes' are called 'misdemeanors' or 'high misdemeanors.' Unless otherwise provided, a misdemeanor is punishable by a maximum fine of $1,000 or by imprisonment for not more than three years, or both, *N. J. S. A.* 2A:85–7, and a high misdemeanor is punishable by a maximum fine of $2,000, or by imprisonment for not more than seven years, or both, *N. J. S. A.* 2A:85–6. These offenses are within our constitutional guarantees of indictment and trial by jury.

Below the grade of crime are lesser offenses, none of which carries the stigma or the disabilities which follow upon a conviction of crime, *State v. Maier,* 13 *N. J.* 235, *pp.* 250–251 (1953); *State v. Block,* 119 *N. J. L.* 277, 282 (*Sup. Ct.* 1938), affirmed, 121 *N. J. L.* 73 (*E. & A.* 1938); *Huff v. C. W. Goddard Coal, etc., Co.,* 106 *N. J. L.* 19, 21 (*Sup. Ct.* 1930), or authorized maximum penalties as severe as those which may be imposed upon a conviction for crime. Among the lesser offenses are 'disorderly person' offenses which cover a wide gamut of misbehavior, see *N. J. S. A.* 2A:170–1 *et seq.,* and which, unless otherwise provided, carry a maximum of one year in jail or a $1,000 fine or both, *N. J. S. A.* 2A:169–4. In addition there are other statutes providing for lesser offenses with still lower limits on punishment, such as the Motor Vehicle Act, and of course there are municipal ordinances as well.

All of the offenses below the grade of crime come within the generic category of 'petty offenses,' not to suggest thereby that the authorized punishments are trivial but rather to say that because the consequences of a conviction are limited, these offenses are beyond the concept of 'crime' within the intent of our State Constitution's provisions for indictment and trial by jury. That offenses below the grade of crime may thus be tried without indictment and petit jury has long been the law of our State. See the comprehensive discussion in *State v. Maier, supra,* 13 *N. J.,* at *p.* 260, *et seq.* The United States Supreme Court takes the same view of the Federal Constitution, finding petty federal offenses to be beyond its guaranty of jury trial. *Cheff v. Schnackenberg, supra,* 384 *U. S.* 373, 86 *S. Ct.* 1523, 16 *L. Ed. 2d* 629; *District of Columbia v. Clawans,* 300 *U. S.* 617, 57 *S. Ct.* 660, 81 *L. Ed.* 843 (1937). So generally do other

jurisdictions. Annotation, 75 *L. Ed.* 177 (1931) ; Frankfurter and Corcoran, 'Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury,' 39 *Harv. L. Rev.* 917 (1926) ; 31 *Am. Jur., Jury*, §§ 34, 36, *pp.* 40–41 (1958). However incongruous the results may be, the constitutional provisions have been read only to continue the right to jury trial in situations in which the right was established when the constitutions were adopted, and therefore to be inapplicable to 'petty offenses' since offenses so classifiable were tried summarily at that time."

Defendant nonetheless contends a jury trial must be afforded, for reasons to which we turn.

## I

First, defendant asked that we reconsider *State v. Maier*, 13 *N. J.* 235 (1953). That case involved the same disorderly persons statute with which we are here concerned. Prior to the adoption of that statute, a simple assault and battery had been denounced as a "misdemeanor," *i. e.,* a crime, with a maximum penalty of three years in jail and a $1,000 fine, and of course a conviction entailed the civil disabilities which other statutes visited upon a conviction for crime. By "downgrading" the wrong to a disorderly persons offense, the Legislature decided such misconduct should carry no punishment beyond that authorized for petty offenses and should not result in the civil disabilities theretofore consequent upon a conviction of assault and battery as a crime.

In *Maier*, by a vote of 4 to 3, this Court sustained the constitutionality of this statute. Defendant in the case before us asks that we accept the view of the dissent in *Maier*. The dissent, as we understand it, rested upon two propositions : (1) that assault and battery was a crime at common law rather than a petty offense ; and (2) that our State Constitution assured indictment and trial by jury with respect to each and every act of misconduct which at common law was denounced as a crime. From those propositions, it was argued that the Legislature could not lower the grade of such misconduct by treating it as a disorderly persons offense

(or perhaps that, no matter how petty the new level of authorized punishment, the procedural rights which attended a common-law prosecution for the specific misdeed remained inseparable from it).

The majority opinion in *Maier* disputed the first proposition, *i. e.,* that a simple assault and battery could not be prosecuted as a petty offense at common law. In any event, the majority declined to accept the second proposition, that the Legislature could not downgrade what was a crime at common law to an offense below the grade of crime and refuse a trial by jury. With this we fully agree.

Our Constitution was not intended to consecrate the common law's treatment of any specific misconduct and thus to bar legislative revaluation of it in the light of changing conditions and mores. Rather the Constitution abstracted from the common law the concept that whether a prosecution must be by indictment and jury trial depends upon the consequences which ensue from a conviction. Thus succeeding generations remained free to decide what is worthy of the pain and stigma of a conviction for crime but obliged to provide for indictment and trial by jury whenever that pain and stigma are authorized. It would hardly do to require the State to continue to lay a heavy hand upon conduct now unworthy of it, for no better reason than an appraisal of it made centuries ago in another clime. Nor would it make sense to permit the Legislature to deny the rights of indictment and jury trial for an act it punishes as a misdemeanor or even a high misdemeanor simply because the forbidden act was not a crime at common law.

The rational course, as we have said, is to attribute to the Constitution the principle that these procedural rights must be afforded or not, depending upon whether the offense is treated as a crime or as a petty wrong. The surest index is the consequences which may flow from a conviction. In *Frank v. United States,* 395 *U. S.* 147, 89 *S. Ct.* 1503, 1005, 23 *L. Ed. 2d* 162 (May 19, 1969), the Supreme Court said:

"In determining whether a particular offense can be classified as 'petty,' this Court has sought objective indications of the seriousness with which society regards the offense. *District of Columbia v. Clawans, supra* [300 *U. S.* 617, at 628, 57 *S. Ct.* 660, 81 *L. Ed.* 843 (1937)]. The most relevant indication of the seriousness of an offense is the severity of the penalty authorized for its commission. * * *"

We think the severity of the authorized punishment is the only reliable test.[2] If the maximum punishment does not exceed what may be imposed for a petty offense and the conviction does not carry the civil disabilities of a conviction for crime, we see no reason to say the Constitution demands a procedure reserved for crime. Nor do we think it useful to sample popular opinion to determine how much stigma is attributed to each act of misconduct and thereupon to decide, in some way which escapes us, whether an offense is more than petty notwithstanding the statute has so treated it. It is for the Legislature alone to assay the public's judgment, and the Legislature does so when it prescribes the legal consequences which may attend a conviction.

This view of the Constitution is supported by decisions elsewhere under constitutional provisions requiring indictment for "infamous" crimes. Whether a crime is "infamous" is held to depend upon the punishment that is authorized, without any suggestion that an act which at common law was deemed an infamous wrong must forever be denounced with like severity. *Ex parte Wilson,* 114 *U. S.* 417, 5 *S. Ct.* 935, 29 *L. Ed.* 89 (1885); *United States v. Reef,* 268 *F. Supp.* 1015 (*D. Colo.* 1967); *People v. Bellinger,* 269 *N. Y.* 265, 199 *N. E.* 213 (*Ct. App.* 1935); *People v. Kaminsky,* 208 *N. Y.* 389, 102 *N. E.* 515 (*Ct. App.* 1913); *State v. Hyman,* 164 *N. C.* 411, 79 *S. E.* 284 (*Sup. Ct.* 1913); Annotation, 24 *A. L. R.* 1002 (1923).

---

[2] Contempt of court must be handled differently. As to it, the penalty actually imposed is the criterion. See *Bloom v. Illinois,* 391 *U. S.* 194, 88 *S. Ct.* 1477; 20 *L. Ed.* 2d 522 (1968); *cf. In re Buehrer, supra,* 50 *N. J.,* at 519–522.

So, in *In re Buehrer, supra,* 50 *N. J.* 501, in dealing with the power to punish summarily for contempt of court, we accepted the postulate that trial by jury was guaranteed only when the authorized punishment exceeded that constitutionally tolerable for a petty offense, and accordingly held that if a contempt is prosecuted summarily, *i. e.,* without indictment and trial by jury, the maximum punishment may not exceed the maximum for a petty offense. *Cf. Bloom v. Illinois,* 391 *U. S.* 194, 88 *S. Ct.* 1477, 20 *L. Ed. 2d* 522 (1968). We there fixed a maximum of six months and a fine of $1,000, saying we were confident those limits were constitutionally acceptable and reserving the question whether still greater punishment would be compatible with the constitutional concept (50 *N. J.,* at 519-520).

■ For the reasons given, we do not doubt the power of the Legislature to "downgrade" a criminal offense to an offense of a petty grade, and to do so without according a right to indictment or to jury trial, so long as the consequences do not exceed what may constitutionally follow upon a conviction for a petty offense.

## II

Next, defendant contends that the maximum jail term of one year which the statute authorized when these convictions occurred exceeds the permissible limits of punishment for a petty offense and hence a jury trial must be allowed. Defendant leans upon *Duncan v. Louisiana,* 391 *U. S.* 145, 88 *S. Ct.* 1444, 20 *L. Ed. 2d* 491 (1968), in which it was held that an authorized maximum of two years' imprisonment entitled the defendant to jury trial under the Sixth and Fourteenth Amendments to the Federal Constitution. That case did not, however, deal with a one-year term. In any event, the Supreme Court held shortly thereafter that *Duncan* would not be applied retroactively to a trial which began prior to the date of that decision (May 20, 1968). *DeStefano v. Woods,* 392 *U. S.* 631, 88 *S. Ct.* 2093, 20 *L. Ed. 2d* 1308

(1968). Defendant's trial long antedated *Duncan* and hence if *Duncan* could be read to say that a right to jury exists if the authorized penalty is a year, still *Duncan* would not aid him. But, as we have said, *Duncan* did not resolve that question, and in *DeStefano* the Court expressly declined to decide it. We note that the New York Court of Appeals recently held that an offense carrying a maximum of one year is a petty offense. *Hogan v. Rosenberg,* 24 *N. Y. 2d* 207, 299 *N. Y. S. 2d* 424, 247 *N. E. 2d* 260 (*Ct. App.* 1969), prob. juris. noted, *sub. nom. Baldwin v. New York,* 395 *U. S.* 932, 89 *S. Ct.* 2011, 23 *L. Ed. 2d* 447 (June 2, 1969).

In *Buehrer, supra,* 50 *N. J.,* at 519–520, we reserved the question whether the Constitution will tolerate a maximum of one year without trial by jury. Defendant asks that we now decide the question. We think we should not. As we noted above, the Legislature reduced the maximum to six months and a fine of $500 by *L.* 1968, *c.* 113. The effective date of that act was June 25, 1968, shortly after the date of *Duncan* (May 20, 1968). Here the sentence was for a term of six months rather than a year. Although ordinarily the right to a jury is determined by the punishment the statute permits rather than by what is imposed in the given case, *Frank v. United States, supra,* 395 *U. S.,* at 148, 89 *S. Ct.* at 1505, 23 *L. Ed. 2d,* at 166, yet where the offense is expressly denominated a petty offense and a conviction carries none of the the civil disabilities of a conviction for crime, it would be more appropriate to obviate the constitutional error, if there were one, by reducing the penalty to the valid limits rather than by striking down the statute or the conviction. Thus, if we held a year to be too long, it would not affect any of the convictions before us or the sentences imposed.

### III

The final question is whether, when several petty offenses are tried together, a jury trial should be accorded because the maximum authorized sentences aggregate more than a year.

Defendant refers to *Chambers v. District of Columbia,* 90 *U. S. App. D. C.* 153, 194 *F. 2d* 336 (*D. C. Cir.* 1952), in which a right to appeal was found because the dollar penalties imposed on the several charges totaled more than the minimum sum requisite for appeal. To the same effect is *O'Bryant v. District of Columbia,* 223 *A. 2d* 799 (*D. C. Ct. App.* 1966). We add that *James v. Headley,* 410 *F. 2d* 325 (5 *Cir.* April 9, 1969), indicates the permissible sentences on charges tried together should be aggregated to decide whether the right to counsel exists. On the other hand, it has been held that a jury trial may not be demanded where the offenses are all petty even though the total of the authorized sentences exceeds what would be permissible without a jury trial in the case of a single offense. *Scott v. District of Columbia,* 122 *A. 2d* 579 (*D. C. Mun. Ct. App.* 1956); *Savage v. District of Columbia,* 54 *A. 2d* 562 (*D. C. Mun. Ct. App.* 1947); *State v. James,* 76 *N. M.* 416, 415 *P. 2d* 543 (*Sup. Ct.* 1966).

 We doubt that the Constitution requires trial by jury merely because several charges are tried together rather than successively. Nonetheless, and apart from possible constitutional compulsion, it would accord with the realities of the situation to say that trial by jury is relevant when, as here, the several petty offenses are factually related and arise out of a single event. In such circumstances, the prosecutor (or the municipal court if there is no prosecutor) should offer the defendant a jury trial, and if such offer is not made, then the sentences may not total more than the maximum authorized for a petty offense. *Cf. In re Buehrer, supra,* 50 *N. J.,* at 520.

 We will amend the judgments accordingly. The jail sentences shall be deemed to be concurrent. We leave the maximum at six months, thus to accord with the legislative decision in the 1968 statute mentioned above, fixing that period as the maximum for a disorderly persons offense.[3]

---

[3] This disposition makes it unnecessary to decide whether a larger jail term is constitutionally compatible with a petty offense.

The aggregate period of probation, 36 months, will not be disturbed; probation for that term is authorized for a disorderly persons offense, *N. J. S.* 2A :169–6, and is constitutionally acceptable with respect to such an offense. See *Frank v. United States, supra,* 395 *U. S.* 147, 89 *S. Ct.* 1503, 23 *L. Ed. 2d* 162. So also the provisions for the weekly payments will remain.

The judgments as herein modified are affirmed.

*For modification*—Chief Justice WEINTRAUB and Justices FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*Opposed*—None.