Judge CUFF
(temporarily assigned) delivered the opinion of the Court.
In this appeal, we consider whether a defendant is entitled to a jury trial when facing a third or subsequent driving while intoxicated (DWI) charge pursuant to N.J.S.A. 39:4-50. This Court previously answered that question in the negative, over twenty-five years ago, in State v. Hamm, 121 N.J. 109, 130, 577 A.2d 1259 (1990), cert. denied, 499 U.S. 947, 111 S.Ct. 1413, 113 L.Ed.2d 466 (1991). Since then, however, the Legislature has amended the DWI statute to include additional penalties. As such, we now apply our analysis from Hamm to determine whether the current version of the law requires a different outcome.
At the time Hamm was decided, third or subsequent DWI offenses were punishable by several thousand dollars in fees, surcharges, and assessments, a ten-year driver’s license suspension, and 180 days’ confinement, which could be served through community service and outpatient treatment. Today, a third or subsequent offender faces an additional $251 in fees, is subject to the same license suspension, must be confined for 180 days, and *107 must install an ignition interlock device[1] in his vehicle for one to three years. The municipal court in this case held that this new scheme did not implicate the right to a jury trial, and the Law and Appellate Divisions agreed.
The critical issue in resolving this case is whether the DWI offense is “serious” or “petty” for purposes of the Sixth Amendment. In answering that question, the primary focus is on the potential term of incarceration; specifically, whether it exceeds six months. A secondary consideration, but one which may render an offense “serious” regardless of the term of confinement, is the additional penalties imposed, including fines and fees.
In weighing those factors, we conclude that third or subsequent DWI offenders do not face more than six months’ incarceration and that the additional penalties, although significant, are not sufficiently serious to trigger the right to a jury trial. At the same time, we emphasize that the Legislature has reached the outer limit of what is permitted without a jury trial and that any additional penalties would cause this Court to reach a different conclusion. Under the current law, however, we hold that the need for a jury trial is outweighed by the State’s interest in promoting efficiency through non-jury trials.
I.
In the early morning hours of October 5, 2011, defendant James R. Denelsbeck’s vehicle was stopped by an officer of the Yentnor City Police Department for failing to stop at a red light. Defendant was arrested when he did not satisfactorily perform field sobriety tests. An Alcotest machine later indicated that defendant’s blood alcohol content (BAC) was .12 percent.
*108 Defendant was issued a motor-vehicle summons for DWI, N.J.S.A 39:4-50; careless driving, N.J.S.A. 39:4-97; and failure to observe a traffic signal, N.J.S.A 39:4-81. Defendant had three prior DWI convictions and therefore faced a mandatory term of 180 days’ confinement, years of driving restrictions, and numerous fees, fines, and assessments. He also faced a maximum term of 15 days’ confinement on each of the other driving offenses.
Defendant filed a demand for a jury trial in municipal court. In response, the prosecutor advised the court that the State would not seek more than 180 days’ incarceration. After argument, the court denied the jury trial request. A bench trial commenced and the municipal court found defendant guilty of DWI and failure to observe a traffic signal. Defendant was acquitted of the careless driving charge.
Given defendant’s prior convictions, he was sentenced to a mandatory term of 180 days in the Atlantic County Jail, pursuant to N.J.S.A. 39:4-50(a)(3). Defendant was also sentenced to a ten-year driver’s license suspension followed by two years of using an ignition interlock device, twelve hours in the Intoxicated Driver Resource Center (IDRC), $1006 in fines, and over $350 in applicable surcharges, costs, and fees. He was also charged $89 in fines and costs for failing to observe a traffic signal.
Defendant filed an appeal in the Law Division. After a de novo review, the Law Division affirmed the denial of defendant’s request for a jury trial, as well as defendant’s convictions and sentence. Defendant appealed solely on the issue of his right to a jury trial.
The Appellate Division affirmed in an unpublished opinion based on “well-settled authority” holding that DWI offenders facing a prison term of six months or less are not entitled to a jury trial. The panel specifically relied on this Court’s decision in Hamm to conclude that DWI in New Jersey is “considered a motor-vehicle offense rather than a criminal offense.” The panel also found that there was “nothing in the record to suggest that defendant faced any real risk of receiving a prison term greater than 180 days” *109 and that “the additional fines, penalties, and surcharges defendant faced were not ‘onerous’ penalties triggering a right to a jury trial.”
We granted defendant’s petition for certification. State v. Dnelsbeck, 220 N.J. 575, 108 A.3d 635 (2015).
II.
A.
Defendant’s primary argument is that the Legislature has increased the severity of the penalties for third or subsequent DWI offenses since this Court’s opinion in Hamm to the point that the right to a jury trial now applies. Specifically, defendant argues that the “packing” by the Legislature of numerous financial penalties, the ten-year driving privilege suspension, the ignition interlock device requirement, and the mandatory 180 days’ confinement demonstrate that it now views third or subsequent DWI offenses as “serious” for purposes of the Sixth Amendment. Defendant also submits that he should have been granted a jury trial under the New Jersey Constitution.
The State argues that the amendments to N.J.S.A. 39:4-50(a) have not converted a third or subsequent DWI offense from a quasi-criminal motor-vehicle charge into a “serious” offense requiring a jury trial. The State emphasizes that the DWI offense remains classified as a motor-vehicle violation and that the maximum jail term has not changed since Hamm was decided. The State also contends that many of the penalties pre-date Hamm and that the few new penalties are either collateral or insufficiently onerous.
In addition, the State argues that the right to a jury trial was not triggered by defendant’s offenses carrying an aggregate term of imprisonment exceeding 180 days because the total penalty was limited to six months’ incarceration under State v. Owens, 54 N.J. 153, 254 A.2d 97 (1969), cert. denied, 396 U.S. 1021, 90 S.Ct. 593, 24 L.Ed. 2d 514 (1970). Lastly, the State offers a detailed rebuttal *110 to defendant’s argument that this ease should be resolved under the New Jersey Constitution.
B.
Amicus curiae New Jersey State Bar Association (NJSBA) argues that the amended DWI statute requires a jury trial and notes that the vast majority of states currently allow jury trials for repeat DWI offenses. In addition, the NJSBA argues that current precedent allowing a defendant to be tried without a jury on multiple “petty” offenses with aggregate sentences exceeding six months, as long as no more than six months’ incarceration will be imposed, “improperly empowers the municipal prosecutor and judge to abrogate the defendant’s right to a jury trial while still subjecting him to multiple charges.” Lastly, the NJSBA provides practical guidance for applying the right to a jury trial to DWI offenses.
Amicus curiae American Civil Liberties Union of New Jersey (ACLU) also argues that the amended DWI statute triggers the right to a jury trial. The ACLU cites many of the same factors and penalties as defendant, but also states that the IDRC requirements create an additional period of incarceration because courts may sentence a defendant to a particular period of treatment and because failure to satisfy the IDRC requirements results in a two-day term of imprisonment. Thus, the ACLU argues that the maximum penalty for third or subsequent DWI offenses is actually 182 days of confinement.
The Attorney General, appearing as amicus curiae, reiterates many of the arguments made by the State, including that DWI is not a criminal offense in New Jersey and that defendant has not offered a justification for departing from federal precedent. In addition, the Attorney General argues that fines and collateral consequences do not factor into the Sixth Amendment analysis and that the principles of stare decisis weigh in favor of reaffirming Hamm. The Attorney General also emphasizes that New Jersey has a legitimate interest in pursuing non-jury trials in DWI cases, *111 and has submitted two charts detailing how other states treat DWI offenses and the right to a jury trial.
III.
A.
The Sixth Amendment of the United States Constitution provides that “[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]” U.S. Const, amend. VI. That provision is applicable to the states by virtue of the Fourteenth Amendment. See Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067-68, 13 L.Ed.2d 923, 926 (1965).
Despite the broad language of the amendment, “it has long been the rule that so-called ‘petty’ offenses may be tried without a jury.” Frank v. United States, 395 U.S. 147, 148, 89 S.Ct. 1503, 1505, 23 L.Ed.2d 162, 166 (1969) (citations omitted). As such, to determine whether the right to a jury trial attaches, the relevant inquiry is whether the case involves a “petty” or “serious” offense. Baldwin v. New York, 399 U.S. 66, 68, 90 S.Ct. 1886, 1887-88, 26 L.Ed.2d 437, 440 (1970).
The single bright-line rule that the United States Supreme Court has articulated in making this determination is that “no offense can be deemed ‘petty’ for purposes of the right to trial by jury where imprisonment for more than six months is authorized.” Id. at 69, 90 S.Ct. at 1888, 26 L.Ed.2d at 440. The Supreme Court has declined, however, to articulate a similar per se rule for cases involving a lesser period of confinement. See id. at 69 n. 6, 90 S.Ct. at 1888 n. 6, 26 L.Ed.2d at 440 n. 6 (“In this case, we decide only that a potential sentence in excess of six months’ imprisonment is sufficiently severe by itself to take the offense out of the category of ‘petty.’ ”).
Rather, the Supreme Court has stated that when a defendant faces less than six months’ incarceration, it will look to “both *112 the nature of the offense itself, as well as the maximum potential sentence, in determining whether [the] ... offense was so serious as to require a jury trial.” Ibid, (internal citations omitted). The “most relevant” information is the “severity of the maximum authorized penalty.” Id. at 68, 90 S.Ct. at 1888, 26 L.Ed.2d at 440.
At the same time, the Supreme Court has cautioned that “the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or ‘petty’ matter and may well result in quite serious repercussions affecting his career and his reputation.” Id. at 73, 90 S.Ct. at 1890, 26 L.Ed.2d at 443. Unlike in cases where the penalty exceeds six months’ imprisonment, however, such “disadvantages, onerous though they may be, may be outweighed by the benefits that result from speedy and inexpensive nonjury adjudications.” Ibid.
In Blanton v. North Las Vegas, the Supreme Court applied this analysis to conclude that a first-time DWI offense was “petty” for purposes of the Sixth Amendment. 489 U.S. 638, 539-40, 109 S.Ct. 1289, 1291-92, 103 L.Ed.2d 550, 554-55 (1989). In doing so, the Supreme Court first explained that there was a presumption that the state legislature viewed the offense as “petty” because it authorized a maximum prison sentence of only six months. Id. at 544, 109 S.Ct. at 1293, 103 L.Ed.2d at 557.
It also found that the inclusion of other penalties did not “clearly indicate[ ] that [DWI] is a ‘serious’ offense.” Ibid. Specifically, the Supreme Court found a 90-day license suspension and completion of an alcohol abuse education course to be insignificant, id. at 544 n. 9, 109 S.Ct. at 1294 n. 9, 103 L.Ed.2d at 557 n. 9, and that a $1000 fine was “well below the $5,000 level set by Congress in its most recent definition of a petty offense[,]” id. at 544, 109 S.Ct. at 1293-1294, 103 L.Ed.2d at 557. Nonetheless, the Supreme Court explained that relevant penalties are not limited “solely to the maximum prison term authorized for a particular offense” and that “[a] legislature’s view of the seriousness of an offense also is reflected in the other penalties that it attaches[.]” Id. at 542, 109 S.Ct. at 1292, 103 L.Ed.2d at 555.
*113 As such, a defendant facing a prison term of six months or less will be entitled to a jury trial “if he can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a ‘serious’ one.” Id. at 544, 109 S.Ct. at 1293, 103 L.Ed.2d at 556. Such a finding will occur only “in the rare situation where a legislature packs an offense it deems ‘serious’ with onerous penalties that nonetheless ‘do not puncture the 6-month incarceration line.’” Id. at 544, 109 S.Ct. at 1293, 103 L.Ed. 2d at 556-57 (citation omitted). Such situations are rare because although “[pjenalties such as probation or a fine may engender a significant infringement of personal freedom, ... they cannot approximate in severity the loss of liberty that a prison term entails.” Id. at 542, 109 S.Ct. at 1292, 103 L.Ed.2d at 556 (internal quotations and citations omitted).
B.
“A similar right to trial by jury is guaranteed under the New Jersey Constitution.” State v. Stanton, 176 N.J. 75, 88, 820 A.2d 637, cert. denied, 540 U.S. 903, 124 S.Ct. 259, 157 L.Ed.2d 187 (2003); see N.J. Const, art. I, ¶ 9 (“The right of a trial by jury shall remain inviolate[.]”); see also N.J. Const, art. I, ¶ 10 (“In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury[.]”). Due to the similar language in the federal and state constitutions, we have long looked to the federal standard to determine the scope of the right to a jury trial. See Owens, supra, 54 N.J. at 159-60, 254 A.2d 97 (citing Frank, supra, 395 U.S. at 147, 89 S.Ct. at 1503, 23 L.Ed.2d at 162).
Indeed, in Hamm, supra, we described the issue of whether a DWI defendant has a right to a jury trial as primarily a question of federal constitutional law “because New Jersey has never recognized a right to trial by jury for the motor-vehicle offense of DWI.” 121 N.J. at 112, 577 A.2d 1259. Thus, this Court explained *114 that the federal principles “provide the analytical framework” for resolving the question of “whether the Legislature has so ‘packed’ the offense of DWI that it must be regarded as ‘serious’ for sixth-amendment purposes.” Id. at 114-15, 577 A.2d 1259.
We have also made clear, however, that trial by jury is relevant when a defendant faces several petty offenses that are factually related and arise out of a single event. Owens, supra, 54 N.J. at 168, 254 A.2d 97. “In such circumstances, the prosecutor (or the municipal court if there is no prosecutor) should offer the defendant a jury trial, and if such offer is not made, then the sentences may not total more than the maximum authorized for a petty offense.” Ibid.
Applying the federal standard, this Court determined that the penalty scheme in effect when Hamm was charged with a third incident of DWI did not require a jury trial. Hamm, supra, 121 N.J. at 111, 577 A.2d 1259. At that time, a third or subsequent DWI offender was subject to 180 days’ incarceration that could be served by completing a 90-day community service sentence and a combination of inpatient and outpatient treatment. See L. 1986, c. 126, § 1. In addition, a third or subsequent DWI offender faced a ten-year driver’s license suspension, ibid.; a fine of $1000, ibid.; an annual $1500 insurance surcharge for three years, L. 1988, c. 156, § 9; and $180 in other fees and charges, L. 1984, c. 126, § 1. The sentence imposed on Hamm, which consisted of ninety days’ community service, twenty-eight days in an inpatient treatment program, and sixty days in an outpatient program, as well as the prescribed driver’s license suspension, surcharges, and other financial assessments, fell well within the discretion afforded to a court at that time to craft a sentence that minimized the time of incarceration. Hamm, supra, 121 N.J. at 111, 577 A.2d 1259.
In response to Hamm’s argument that this penalty scheme classified a third DWI offense as “serious” rather than “petty,” we noted that “when the New Jersey Legislature wants to treat an offense as ‘serious,’ there will be no mistaking it.” Id. at 117, 577 A.2d 1259. By way of example, we noted that the Legislature had *115 imposed mandatory prison sentences of a year or more to address certain gun and drug offenses. Id. at 117-18, 577 A.2d 1259. In contrast, we stated that for DWI, the Legislature “has yet to impose the full force of law on that offense that would denote a social evaluation that DWI is a ‘crime’ or an offense that equates with the need of trial by jury.” Id. at 116, 577 A.2d 1259. Specifically, we noted that the law focused on prevention over punishment, carried shorter sentences than those in many other states, and had “yet to require a sentence in excess of six months, or even to require a mandatory six months of incarceration.” Ibid.
We then turned to the additional penalties, noting that the $1000 fine would be regarded as “petty” under Blanton and that the other fees were civil in nature and therefore should be discounted. Id. at 117, 577 A.2d 1259. The Court explained that “[t]he various rehabilitation and enforcement surcharges are reasonable in themselves” and that the increased insurance premiums were not specific to DWI offenses. Id. at 125, 577 A.2d 1259. We also found that the insurance surcharge “was totally unrelated to any legislative intent to ‘pack’ the DWI offense” and that the collateral consequences attendant to DWI convictions are limited. Id. at 125-26, 577 A.2d 1259.
We further stated in Hamm> that a license to drive is a necessity but that other licenses, including those to practice certain professions, may be lost without a jury trial. Id. at 124, 577 A.2d 1259 (citation omitted). We also noted that the suspension, which previously existed, did not “reflect a significant escalation of the seriousness with which New Jersey’s Legislature regards this offense, but rather a shifting social conclusion about what works best with DWI offenders.” Id. at 124-25, 577 A.2d 1259.
Finally, in Hamm, we discussed the Legislature’s rehabilitative focus and described its decision to set a maximum penalty of 180 days’ confinement as demonstrating “the undoubted legislative intention to continue to treat DWI as a motor-vehicle offense, not *116 a crime.” Id. at 127, 577 A.2d 1259. We also stated that “the provision of jury trial on a DWI charge by the majority of other states does not suggest the same result in New Jersey” due to the differences in offense structures and classification. Ibid.
We thus concluded that third or subsequent DWI offenses were not “serious” and did not require the option of a jury trial. Id. at 128-29, 577 A.2d 1259. At the same time, however, we emphasized that this was “not an easy question” and that Blanton appears to suggest that “the closer the DWI system actually comes to the six-month incarceration line, the less room there may be for other penalties.” Id. at 130, 577 A.2d 1259.
IV.
N.J.S.A. 39:4-50(a) currently “prohibits the operation of a motor vehicle ‘while under the influence of intoxicating liquor,’ or ‘with a [BAC] of 0.08% or more by weight of alcohol in the defendant’s blood.’ ” State v. Revie, 220 N.J. 126, 133, 104 A.3d 221 (2014) (quoting N.J.S.A. 39:4-50(a)). The statutory scheme provides a tiered penalty structure for first, second, and “third or subsequent” DWI offenses, with increasing penalties for each additional offense. N.J.S.A. 39:4 — 50(a).
Following a series of amendments in 2004, a third or subsequent violator currently
shall be sentenced to imprisonment for a term of not less than 180 days in a county jail or workhouse, except that the court may lower such term for each day, not exceeding 90 days, served participating in a drug or alcohol inpatient rehabilitation program approved by the [IDRC.]
[N.J.S.A. 39:4-50(a)(3) (emphasis added).]
Thus, unlike the pre-2004 statute, the current law requires a third or subsequent DWI offender to be confined “either entirely in jail or partially in jail and partially in an inpatient facility” with “no allowance for noncustodial alternatives.” State v. Luthe, 383 N.J.Super. 512, 514, 892 A.2d 736 (App.Div.2006). The mandatory sentence of 180 days, however, has remained the same.
*117 A third or subsequent DWI offender continues to face a driver’s license suspension of ten years. N.J.SA 39:4-50(a)(3). That requirement has been in place since 1986 and was part of the penalty scheme considered by the Court in Hamm. Since Hamm, the Legislature has added an additional restriction in that third or subsequent DWI offenders “shall be required to install an ignition interlock device under the provisions of P.L. 1999, c. 417[.]” N.J.S.A 39:4-50(a)(3). The device must be installed “in the motor vehicle principally operated by the offender during and following the expiration of the period of license suspension imposed[.]” N.J.S.A. 39:4-50.17(b). After the period of license suspension has ended, “the device shall remain installed for not less than one year or more than three years, commencing immediately upon the return of the offender’s driver’s license after the required period of suspension has been served.” Ibid.
Several financial penalties and assessments also apply to DWI offenders. Initially, there is a $1000 fine for a third or subsequent violation. N.J.S.A. 39:4-50(a)(3). There is also a $100 surcharge to support the Drunk Driving Enforcement Fund, N.J.S.A. 39:4— 50.8; a $100 fee payable to the Alcohol Education, Rehabilitation and Enforcement Fund, N.J.S.A. 39:4 — 50(b); a $75 assessment for the Safe Neighborhoods Services Fund, N.J.S.A. 2C:43-3.2; a $50 assessment under N.J.S.A. 2C:43-3.1(c); a $100 DWI surcharge under N.J.S.A. 39:4 — 50(i);[2] and an insurance surcharge of $1500 per year for three years for third or subsequent DWI offenses occurring within a three-year period, N.J.SA. 17:29A-35(b)(2)(b). A total of $6 is also added to every motor-vehicle violation fine. N.J.SA 39:5-41(d)-(h).
The $1000 fine, L. 1986, c. 126, § 1; the $100 surcharge for the Drunk Driving Enforcement Fund, L. 1984, c. 4, § 1; and the annual $1500 insurance surcharge, L. 1988, c. 156, § 9; existed at the time Hamm was decided. Since Hamm, the Alcohol Edu *118 cation Fund fee has increased from $80 to $100, L. 1986, c. 126, § 1. In contrast, the $75 assessment fee was not put in place until August 1993, L. 1993, c. 220, § 11; the $100 DWI surcharge did not apply until 2002, L. 2002, c. 34, § 17; and the $50 assessment under N.J.S.A. 2C:43-3.1(c) and the $6 in fines under N.J.S.A. 39:5^41(d)-(h) were not enacted until after Hamm was argued, L. 1990, c. 64, § 1; L. 1990, c. 95, § 2. In other words, an additional $251 in fines, fees, assessments, and surcharges have been imposed since Hamm.
DWI offenders also may be subject to penalties, including confinement, for failing to meet obligations arising from a DWI conviction. For example, an offender who does not install an ignition interlock device “in a motor vehicle owned, leased or regularly operated by him shall have his driver’s license suspended for one year ... unless the court determines a valid reason exists for the failure to comply.” N.J.S.A. 39:4-50.19(a). The offender also will be subject to a one-year license suspension for driving an ignition interlock-equipped vehicle that “has been started by any means other than his own blowing into the device” or for driving “a vehicle that is not equipped with such a deviee[.]” Ibid.
N.J.S.A. 39:4-50(b) provides that any person convicted of DWI “must satisfy the screening, evaluation, referral, program and fee requirements of the Division of Alcoholism and Drug Abuse’s Intoxicated Driving Program Unit, and of the Intoxicated Driver Resource Centers and a program of alcohol and drug education and highway safety, as prescribed by the chief administrator.” Failure to comply “shall result in a mandatory two-day term of imprisonment in a county jail and a driver license revocation or suspension and continuation of revocation or suspension until such requirements are satisfied, unless stayed by court order[.]” Ibid. That requirement existed when Hamm was decided.
N.J.S.A. 39:3^40 states that no person whose driver’s license has been suspended or revoked “shall personally operate a motor vehicle” during the period of suspension or revocation. An offend *119 er whose license has been suspended due to a DWI conviction will be fined $500 and will have his driver’s license “suspended for an additional period of not less than one year or more than two years, and shall be imprisoned in the county jail for not less than 10 days or more than 90 days.” N.J.S.A. 39:3 — 40(f)(2). The DWI offender’s motor-vehicle registration privilege will also be revoked. N.J.S.A. 39:3^10(a). This penalty existed when Hamm was decided, except that the statute did not include a minimum 10-day term of imprisonment and did not require revocation of the offender’s registration. L. 1994, c. 286, § 1.
Lastly, under N.J.S.A. 39:5-36(a), a court may incarcerate “any person upon whom a penalty or surcharge ... has been imposed for a violation of [a motor-vehicle offense] where the court finds that the person defaulted ... without good cause and the default was willful.” Such incarceration cannot “exceed one day for each $50 of the penalty or surcharge so imposed” or “a period of 90 consecutive days.” Ibid. The earlier version of this law, in effect when Hamm was decided, was substantially identical, other than that incarceration could not exceed “1 day for each $20.00 of the fine so imposed!.]” L. 1975, c. 144, § 4.
V.
As an initial matter, we decline defendant’s request to resolve this case on independent principles of the New Jersey Constitution. As was true when Hamm was decided, “New Jersey has never recognized a right to trial by jury for the motor-vehicle offense of DWI” and DWI is “not a crime under New Jersey law.” 121 N.J. at 112, 577 A.2d 1259. Those facts have not changed and we remain satisfied that the protections guaranteed by the Sixth Amendment are consonant with those found in our State Constitution. We therefore apply the federal standard.
A.
We begin our inquiry with “[t]he most relevant indication of the seriousness” of an offense — the severity of the penalty *120 authorized for third or subsequent DWI offenses. Frank, supra, 395 U.S. at 148, 89 S.Ct. at 1505, 23 L.Ed.2d at 166. In doing so, we keep in mind that “no offense can be deemed ‘petty’ for purposes of the right to trial by jury where imprisonment for more than six months is authorized.” Baldwin, supra, 399 U.S. at 69, 90 S.Ct. at 1888, 26 L.Ed.2d at 440. On the other hand, if the offense is punishable by six months or less, it is “appropriate to presume ... that society views such an offense as ‘petty.’ ” Blanton, supra, 489 U.S. at 543-44, 109 S.Ct. at 1293, 103 L.Ed.2d at 556.
N.J.S.A. 39:4-50(a), the provision of the Motor Vehicle Code addressing third or subsequent DWI offenses, does not authorize a penalty of over six months’ confinement. The current mandatory nature of the term of imprisonment, while a modification of the penal aspect arising from a third or subsequent DWI conviction, does not lengthen the potential term of confinement or alter our analysis. Indeed, the 180-day sentence is the same as that addressed in Hamm, with the only difference being in how the 180 days must be served.
Under the 1986 version of N.J.S.A. 39:4-50(a) addressed in Hamm, a DWI offender could potentially serve 90 days through community service and the remaining 90 days through outpatient treatment. In contrast, a person sentenced under the current law is required to spend the entire 180-day sentence incarcerated, unless the defendant enrolls in up to 90 days of inpatient treatment. Such treatment may not be available to some individuals due to their financial situation or insurance coverage, and they will forego this alternative.
Therefore, regardless of its intent, the Legislature has effectively replaced a largely non-custodial and treatment-based approach with one that more heavily emphasizes confinement. This increased emphasis on incarceration represents an alteration of the Legislature’s view of the penal consequences needed to address the scourge of intoxicated driving by third and subsequent offenders. This modification also marks the limit the Sixth Amendment *121 will permit in terms of confinement without triggering the right to a jury trial. It does not, however, alter the guiding factor in our analysis: the amount of confinement to which a defendant is exposed.
We are not persuaded that defendant faced more than 180 days’ incarceration in this case. To start, we reaffirm our holding in Owens, supra, that trial by jury is relevant when a defendant faces “several petty offenses [that] are factually related and arise out of a single event” but that the failure to offer the defendant a jury trial in such a case is cured by limiting the total sentence to no more “than the maximum authorized for a petty offense.” 54 N.J. at 163, 254 A.2d 97. As noted, the primary focus of the right to a jury trial is on the penal exposure. Thus, in terms of the right to a jury trial, it is immaterial whether a defendant is tried on several factually related “petty” offenses or on a single “petty” offense as long as the total period of incarceration does not exceed six months.
As such, defendant was not entitled to a jury trial based on the 15-day jail terms that his other two offenses carried. Defendant was assured that he would not be sentenced to more than 180 days’ imprisonment and, more importantly, was constitutionally guaranteed a sentence of no more than six months.
We also decline to find that the IDRC requirements under N.J.S.A. 39:4-50(b) bring a third or subsequent DWI offender’s maximum sentence to over 180 days’ confinement. To be sure, those requirements have some relevance in determining whether the Legislature has “packed” the statute to the point of elevating it to a “serious” offense. At the same time, however, we find that the two-day sentence for failure to fulfill the requirements of the Intoxicated Driving Program Unit and the IDRC, a sentence dependent on an independent and not necessarily inevitable event, is too attenuated to affect a DWI offender’s direct exposure to incarceration.
The two-day term of imprisonment is not part of the sentence for the DWI offense. Rather, the DWI statute merely requires *122 the sentencing court to “inform the person convicted that failure to satisfy [the] requirements shall result in a mandatory two-day term of imprisonment!.]” Ibid. The sentencing court is not involved in imposing the penalty, and the conduct giving rise to the sentence is distinct from that underlying the DWI offense. In other words, the two-day sentence is imposed for the separate act of not complying with the Intoxicated Driving Program Unit and IDRC requirements, not the original DWI offense.
In addition, the statute makes clear that the sentencing judge’s only role in this process is to “inform the person convicted” that he must comply with the requirements. Ibid. It does not instruct the judge to craft those requirements or to include them in the sentence.
B.
Because defendant did not face over six months of confinement, we presume the DWI offense to be “petty,” Hamm, supra, 121 N.J. at 112-13, 577 A.2d 1259, and address the question whether this is a “rare situation where a legislature packs an offense it deems ‘serious’ with onerous penalties that nonetheless ‘do not puncture the 6-month incarceration line,’” Blanton, supra, 489 U.S. at 544, 109 S.Ct. at 1293, 103 L.Ed.2d at 556-57 (citation omitted). In making this determination, we consider “only penalties resulting from state actionf.]” Id. at 544 n. 8, 109 S.Ct. at 1293 n. 8, 103 L.Ed. 2d at 557 n. 8.
To begin with, as in Hamm, supra, we find that the deprivation of a license to drive “is clearly a ‘consequence of magnitude.’ ” 121 N.J. at 124, 577 A.2d 1259 (citation omitted). We also reaffirm that the ten-year license suspension, which is not new, “does not in any sense reflect a significant escalation of the seriousness with which New Jersey’s Legislature regards this offense, but rather a shifting social conclusion about what works best with DWI offenders.” Ibid. The history and analysis regarding this suspension remain the same, and we see no reason to repeat our analysis from Hamm on this point. See id. at 118-22, 577 A.2d 1259.
*123 The license suspension, however, is no longer the only driving restriction included in the statute. The requirement under N.J.S.A. 39:4-50.17(b) that an offender facing a second or subsequent DWI conviction install an ignition interlock device did not exist in 1990, and we now recognize it as relevant to our analysis. That mandate places a restriction on the offender’s ability to drive his vehicle, and also prevents him from operating any vehicle lacking an ignition interlock device. N.J.S.A 39:4-50.17(a)-(c).
Those limitations, however, are far less burdensome than a license suspension. As a practical matter, an offender need not install an ignition interlock device during the suspension period if he sells the vehicle or transfers ownership to another person. Indeed, the New Jersey Motor Vehicle Commission advises that installing an ignition interlock device is not necessary if the individual “do[es] not have access to or plants] to operate any vehicle[.]” N.J. Motor Vehicle Commission, Ignition Interlock Device FAQs 2 (2016), http://www.state.nj.us/mvc/pdf/Violations/ interlock-faq.pdf.
Moreover, even when the ignition interlock device is installed, the burden is not so onerous as to indicate that the Legislature views repeat DWI offenses as “serious.” Specifically, the ignition interlock device merely limits the vehicles an offender can operate, and prevents the offender from driving with a certain BAC level. Thus, while perhaps an inconvenience, the requirement, like the license suspension, is preventative rather than punitive.
The preventative nature of the ignition interlock device requirement is also reflected in the provision that individuals with family income not exceeding 149 percent of the federal poverty level are entitled to pay a reduced leasing fee for the ignition interlock device, and need not pay anything for the installation, monitoring, calibration, or removal of said device. N.J.S.A. 39:4-50.17a. Similarly, the one-year license suspension for failure to install an ignition interlock device will not be applied if “the court determines a valid reason exists for the failure to comply.” N.J.S.A. 39:4-50.19(a).
*124 The costs associated with the device, however, likely represent the greatest burden imposed by this requirement. The ACLU estimates the cost of having an ignition interlock device as approximately $1050 for one year and $2850 for three years. Such an expense is significant, but is spread over a period of time and, as noted, can be reduced based on income.
In addition, that cost is not the result of fees paid to the State. Rather, it simply represents the price of satisfying a court order based on market rates. In that way, the expenses are no different from any other cost of complying with a court order, such as finding alternate means of transportation when one’s driver’s license is suspended. A prime distinction here, ironically, would appear to be that, unlike with other attenuated costs, the Legislature has attempted to lessen the cost of compliance for low-income offenders. Thus, although we consider this a financial burden, we do so to a limited extent.
More directly, DWI offenders on their third or subsequent conviction face $5931 in fees, fines, and assessments. Of that amount, only the $1000 fine in the DWI statute and the $50 assessment under N.J.S.A. 2C:43-3.1(c) can be considered criminal penalties. As in Hamm, we note that $1050 would constitute a “petty” fee under Blanton, supra, which cited $5000 as the amount associated with federal “petty” offenses. 489 U.S. at 544-45, 109 S.Ct. at 1294,103 L.Ed.2d at 557 (citing 18 U.S.C.A § 1 (1982 ed., Supp. IV)). The remaining fees are civil penalties which “we do not disregard,” but we note that “they are not the penalties associated with crimes.” Hamm, supra, 121 N.J. at 117, 577 A.2d 1259.
While the use of civil penalties tends to show that the Legislature does not view the offense as “serious,” $5931 in civil fines is significant. It is $251 more than the amount imposed in 1990 and exceeds the $5000 penalty mentioned in Blanton and federal law. 18 U.S.C.A. § 3571(b).
We do not, however, view the $5000 amount as dispositive in regard to the right to a jury trial. The Supreme Court in
*125 Blanton, supra, did not treat it as such and instead simply noted that it had “frequently looked to the federal classification scheme in determining when a jury trial must be provided.” 489 U.S. at 645 n. 11, 109 S.Ct. at 1294 n. 11, 103 L.Ed.2d at 567 n. 11. It is also worth noting that the fines associated with “petty” federal offenses have changed in the past. See 18 U.S.CA § 1 (1964 ed.) (stating that petty offense was “any misdemeanor, the penalty of which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both”).
In addition, strict adherence to a set amount would overlook the context of a monetary penalty, including that money, as opposed to a term of confinement, is subject to inflation. As such, while the amount of any surcharges, fines, or assessments is an essential factor in determining the right to a jury trial, and while we are not inclined to approve of fees larger than those present here, our inquiry does not end simply because the total amount due exceeds $5000.
The remaining penalties and fees, including the penalties for failing to install an ignition interlock device, N.J.S.A. 39:4— 50.19(a); driving on a suspended license, N.J.S.A 39:3-40; and failing to pay a penalty or surcharge, N.J.S.A. 39:5-36; are too attenuated to be relevant to the current issue before the Court. As with the two-day term of incarceration for not satisfying the IDRC requirements, those penalties are for conduct separate and distinct from the DWI offense. Although being convicted of a third or subsequent DWI offense makes it possible for the individual to receive additional penalties, such penalties are in no way preordained. Their applicability depends entirely on the subsequent conduct and choices of that person. Those penalties are therefore too removed from the DWI statute to enter into our analysis.
VI.
Given that the total term of potential confinement does not exceed six months, we presume the DWI offense to be “petty” for *126 purposes of the Sixth Amendment. The Legislature has, however, reached the outer limit in subjecting third and subsequent DWI offenders to confinement without a jury trial. Defendant faced a mandatory term of six months’ confinement, the constitutional maximum. To reiterate, “the closer the DWI system actually comes to the six-month incarceration line, the less room there may be for other penalties.” Hamm, supra, 121 N.J. at 130, 677 A.2d 1259.
In light of that fact, the State has also reached the outer limit of additional penalties that may be added for a third or subsequent DWI offense without triggering the right to a jury trial. Along with increasing the severity of the sentence in terms of confinement, it has added another $251 in fines, bringing the total to nearly $6000, and has enacted new driving limitations through the ignition interlock device requirement. Although not all aspects of those changes are equally relevant, the offense is teetering between classifications, and any additional penalties will demonstrate that the Legislature views a third or subsequent DWI as a “serious” offense requiring a trial by jury. Until that day arrives, however, we believe that the penal consequences of the offense do not tip the balance to classify it as “serious.” As a result, the State’s interest in the efficiency and cost-saving benefits of non-jury trials can still prevail.
VII.
In reaching this conclusion, we note that the NJSBA and the Attorney General have provided information about how other jurisdictions treat DWI offenses[3] and approach the right to a jury trial. This Court has also conducted its own review — the results of which are set forth at Appendix A — -which shows that every other state appears to afford jury trials for at least some DWI offenses. Such information, although not dispositive, can be help *127 ful in guiding our decisions, particularly as they relate to important constitutional rights. See State v. Witt, 223 N.J. 409, 425-27, 126 A.3d 850 (2015).
We acknowledge, however, that the significance of any apparent uniformity in state practices can be belied by the context and nuances of each jurisdiction. For example, every other jurisdiction exposes at least some DWI offenders to over six months of confinement. Eighteen do so for the first offense, while the remaining thirty-two, including the District of Columbia, take that approach for second or subsequent offenses. The vast majority of those jurisdictions have also recognized a broader right to jury trials through statute, rule, or their individual constitutions, or have, unlike New Jersey, classified all or some DWI offenses as crimes.
Thus, while other states may provide jury trials in at least some DWI cases, this fact provides minimal guidance for what is appropriate in our State. New Jersey has historically addressed DWI as a motor-vehicle offense. A motor-vehicle offense is not included in an individual’s criminal history record, N.J.AC. 13:59-1.1, and is not subject to expungement as a criminal record, N.J.S.A. 2C:52-28. The Legislature has not enacted a statute guaranteeing a right to a jury trial for DWI offenses. Rather, the legislative response to repeat DWI conduct has been to increase the severity of the penalties focused on prevention and deterrence, thereby creating a law that is far less punitive than those found in many other states. It has resisted criminalizing this conduct except in separate criminal statutes addressing cases where a DWI offense results in bodily injury or death.[4] That approach *128 reveals a legislative intent to blend punishment with deterrence, which runs counter to concluding that the current penalties assessed for third and subsequent DWI offenses have transformed DWI from a “petty” offense, or a quasi-criminal offense as we classify such conduct, to a “serious” offense requiring a jury trial.
VIII.
In sum, we believe that the Legislature has increased the severity of penalties associated with repeat DWI offenses to the point where any additional direct penalties, whether involving incarceration, fees, or driving limitations, will render third or subsequent DWI offenses “serious” offenses for the purpose of triggering the right to a jury trial. At that point, the balance will shift and the State’s interest in efficiency will be outweighed by the magnitude of the consequences facing the defendant. In such an event, the constitutional right to a jury trial will apply, regardless of how the offense is categorized or labeled by the Legislature.
Until that time, however, we are satisfied that the current penalty scheme is within the confines of Sixth Amendment precedent and that the Legislature has managed to strike a minimally acceptable balance in weighing the various interests at play. As such, third or subsequent DWI offenders are not entitled to a jury trial, and defendant’s conviction procured by a bench trial did not violate his Sixth Amendment right to a jury trial.
IX.
The judgment of the Appellate Division is affirmed.

 An ignition interlock device is “a blood alcohol equivalence measuring device which will prevent a motor vehicle from starting if the operator's blood alcohol content exceeds a predetermined level when the operator blows into the device.” N.J.SA. 39:4-50.17(d).

 This surcharge was increased to $125 effective March 1, 2015. L. 2014, c. 54, § 2.

 For clarity and consistency, we use the terms “driving while intoxicated" and "DWI” regardless of the labels employed by each state.

 For example, while intoxication is not an element of the crime of death by auto, DWI "shall give rise to an inference that the defendant was driving recklessly" for the purpose of proving that offense. N.J.S.A. 2C:11-5(a). The same is true of assault by auto. N.J.S.A. 2C:12-l(c)(l); see also State v. Mara, 253 N.J.Super. 204, 213, 601 A.2d 718 (App.Div.1992). A DWI violation may also lead to increased penalties for death by auto, N.J.S.A. 2C: 11 — 5(b)(1)—(3), and assault by auto, N.J.S.A. 2C:12-l(c).