**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1686-16T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

RENEE S. WAGNER, a/k/a
RENEE MILLER, and RENEE
SIMON,

      Defendant-Appellant.

_____

Argued October 17, 2018 – Decided August 27, 2019

Before Judges Fuentes, Accurso and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Warren County, Indictment No. 14-10-0366.

George T. Daggett argued the cause for appellant.

Kelly A. Shelton, Assistant Prosecutor, argued the cause for respondent (Richard T. Burke, Warren County Prosecutor, attorney; Kelly A. Shelton, of counsel and on the brief).

PER CURIAM

On March 26, 2014, New Jersey State Police Trooper Patrick Wynn arrested defendant Renee S. Wagner and charged her with obstructing an investigation of a crime, N.J.S.A. 2C:29-1(b), and providing false information to a law enforcement officer, N.J.S.A. 2C:29-3(b)(4), both disorderly persons offenses. Based on the same core of operative facts, a Warren County grand jury indicted defendant on October 15, 2014, with one count of third degree resisting arrest, N.J.S.A. 2C:29-2(a). The case came to trial before a jury more than two years later.

The jury found defendant guilty of resisting arrest as a disorderly persons offense, as a lesser included offense of the third degree indictable offense, and the disorderly persons offense of hindering one's own apprehension, and acquitted defendant of the disorderly persons offense of obstructing the administration of law.[1] On December 14, 2016, the trial judge sentenced defendant to one year probation, and ordered her to pay the mandatory statutory penalties. We derive the following facts from the record developed before the trial court.

---

[1] We must point out that defendant was not entitled to a jury trial on the two disorderly persons offenses of hindering one's own apprehension and obstructing the administration of law. State v. Denelsbeck, 225 N.J. 103, 111-12 (2016).

A-1686-16T4

In March 2014, defendant was involved in a minor car accident at a Quick Chek convenience store and gasoline station. According to defendant, a car driven by a "young man" named Shane Nolan "tapped" her car, causing "a slight dent on his side panel and [her] bumper." Defendant testified that Nolan "was very, very upset" about how his parents would react to this mishap because he had been in a "pretty severe" accident "a couple of months" earlier. Nolan was specifically concerned about how this might increase his car insurance premium. Defendant testified that she told Nolan: "[W]ell, listen, I'm going to give you my name and my number, when you talk to your parents have them give me a call and, you know, we can settle it between [ourselves] because it was very minor."

Trooper Wynn testified that the barracks sergeant received a called about an automobile accident at the Quick Chek convenience store. Based on information Nolan provided the sergeant, Wynn reported to the Quick Chek to see if there was video footage of the accident from the store's surveillance cameras. Wynn testified the video recording of the accident showed:

> Nolan's vehicle at the gas pumps subsequently depart. As he was leaving at the exit portion, the other vehicle came around the side and struck Mr. Nolan's vehicle.
>
> . . . .

A-1686-16T4

> After the collision, I was able to clearly see both vehicles stopped and the drivers exit both cars, at which point, I was able to observe Mr. Nolan and what appeared to be a [w]hite female with light colored hair in the other vehicle.

Nolan spoke to Trooper Wynn about the accident and gave him a sheet of paper containing defendant's first name and cellphone number. Trooper Wynn proceeded to investigate the accident. Based on the information he had at the time, Trooper Wynn decided to continue the investigation of the accident. Specifically, he needed "to confirm who . . . was driving that vehicle," and obtain the vehicle's registration and insurance information. Trooper Wynn testified that over the next two weeks, he and Nolan called the cellphone number several times. Trooper Wynn testified he personally left "at least one" voicemail message over this two-week period.

Defendant acknowledged she received a telephone call during this time period. She did not return the call because she did not recognize the phone number. However, the one time she returned the call, she spoke to "a dispatcher from the State Trooper." She told the dispatcher her name and said she was returning a call from "somebody" who had called her. The transcription of the March 26, 2016 telephone call from defendant shows she correctly identified herself as "Renee Wagner." However, the State Police dispatcher mistakenly

A-1686-16T4

refers to her as "Britney Wager." This initial error is soon discovered and Trooper Wynn was able to speak to defendant. Unfortunately, the recording ends before the parties began to discuss anything about the accident.

Trooper Wynn testified that he explained to defendant he was investigating the car accident she had with Nolan and "needed the basic information to complete [his] job and complete the report[.]" Trooper Wynn characterized defendant's responses to his questions as "evasive." When he asked her for her name: "I got several different names of Melody, Melanie, [and] Melanie May[.]" Based on her failure to provide basic information and overall uncooperative attitude, Trooper Wynn testified he warned defendant: "You've lied several times, giving several different names at this point. I do need to follow up. It's not just going to go away." Trooper Wynn testified the conversation ended without a satisfactory resolution. Defendant refuted Trooper Wynn's account of this telephone call. She claimed she was cordial at all times and offered to come to the State Police Barracks the following day. Defendant testified that Trooper Wynn responded: "I know where you live and I'll come and find you." She claimed the conversation ended at this point.

Trooper Wynn testified that after the telephone conversation with defendant ended, he was able to locate a photograph of defendant and her home

address in the State motor vehicle records. He and Trooper Abendschoen were dressed in their official State Police uniforms when they arrived at defendant's residence on the evening of March 26, 2014. As he approached the residence, Trooper Wynn testified he saw an older model black Chevrolet blazer that had a damaged front quarter panel, which was consistent with the damage of "the vehicle [he] observed in the surveillance footage[.]" The Trooper went to the front door of the house and spoke to a man who identified himself as defendant's former husband; this man told Trooper Wynn that defendant lived on the property, in a part of the house he referred to as the "annex."

Trooper Wynn testified that he and Trooper Abendschoen proceeded to the part of the property where defendant resided and announced themselves as State Police. As he got closer, Trooper Wynn saw an "older female that was sitting there say something to the two juveniles that were there." The two girls "immediately . . . stood up and left the room." Trooper Wynn approached the sliding glass door carrying a flashlight, made eye contact with defendant, and again identified himself as being with the State Police.

Defendant partially opened the sliding glass door "wide enough" to enable her to "stick her face through it." This enabled Trooper Wynn to notice that her eyes were "bloodshot and watery" and her eyelids were "droopy." According to

6

Trooper Wynn, defendant asked him: "well, what do you want?" This enabled Trooper Wynn "to detect an odor of an alcoholic beverage emanating from her breath." He told defendant that he was the Trooper who spoke to her earlier that evening on the telephone and referenced the accident. According to Trooper Wynn, defendant denied speaking to anyone earlier that night.

Trooper Wynn again advised defendant he was there to investigate the motor vehicle accident and needed to get from her "basic information" such as who was driving the car, the registration number of the vehicle, and to see the insurance identification card. According to Trooper Wynn, defendant remained uncooperative and defiant. Defendant told the Trooper her name was Melody or Melanie. When Trooper Wynn told defendant he knew her name was Renee Wagner, she denied it. When Trooper Wynn confronted her with her driver's license photograph, defendant "immediately [became] confrontational," claimed Trooper Wynn had not previously identified himself as a law enforcement officer, and said: "I don't know who you are. I don't have to tell you anything, [and] things along those lines."

At this point, Trooper Wynn testified that he advised defendant that if she continued to refuse to cooperate, he was going to arrest her for hindering an investigation. Trooper Wynn testified he asked defendant to step outside

multiple times; she refused and attempted several times to slam the sliding glass door closed. The door struck Trooper Wynn's hand several times. At this point, Trooper Wynn "grabbed her shirt, grabbed her arm, her shoulder . . . to attempt to stop her from getting inside that house." The Trooper eventually pulled defendant out of her house, wrestled her to the ground, handcuffed her, and took her into custody. Trooper Abendschoen corroborated Trooper Wynn's account of the events that led to defendant's arrest.

Defendant's testimony describing the event that led to her arrest that night is irreconcilable with the Troopers' testimony. She claimed she responded to her name; she stepped outside her house when the Trooper asked her to do so; she was in the process of closing the sliding glass door to prevent her dog from running out, when Trooper Wynn grabbed her, wrestled her to the ground, and arrested her. Defendant maintained before the jury that she was injured from being handcuffed and was significantly bruised by Trooper Wynn's actions. Defendant testified that Trooper Wynn did not identify himself as a State Trooper, but that she recognized Trooper Abendschoen as a State Trooper standing in the background.

Against this factual backdrop, defendant raises the following arguments on appeal.

POINT I

THE TRIAL COURT ERRED IN NOT CHARGING JUSTIFICATION AS AN ELEMENT OF A DISORDERLY PERSONS CHARGE OF RESISTING ARREST.

POINT II

THE FACTS SURROUNDING THE HINDERING APPREHENSION CHARGE CLEARLY ESTABLISH THAT IT WAS DE MINIMIS.

POINT III

THE JURY SHOULD NOT HAVE BEEN PERMITTED TO CONSIDER THE HINDERING APPREHENSION CHARGE.

Defendant's arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We add only the following brief comments. Defendant did not ask for a justification defense during the charge conference conducted pursuant to Rule 1:8-7(b). As an appellate court, we are bound to disregard any error or omission unless it is clearly capable of producing an unjust result. R. 2:10-2. There is no factual or legal basis to find defendant satisfied this heavy burden here. State v. Jordan, 147 N.J. 409, 422 (1997). In fact, defendant's counsel argued against the trial judge charging the jury with the lesser included offense of a disorderly persons resisting arrest. Thus, this

argument is also precluded under the invited error doctrine. State v. Jenkins, 178 N.J. 347, 359 (2004).

Finally, N.J.S.A. 2C:3-4(b)(1)(a) provides:

> The use of force is not justifiable under this section:
>
> (a) To resist an arrest which the actor knows is being made by a peace officer in the performance of his duties, although the arrest is unlawful, unless the peace officer employs unlawful force to effect such arrest[.]

There is no evidence in this record from which a rational jury could find the arresting officer employed unlawful force to arrest defendant.

However, there is an issue that, although not raised by the parties, must nevertheless be addressed and corrected. The Judgment of Conviction (JOC) erroneously reflects defendant was convicted of the disorderly persons offense of obstructing an investigation under N.J.S.A. 2C:29-1(b). We thus direct the trial judge to amend the JOC to reflect defendant was acquitted of this offense and convicted of the disorderly persons offense of hindering an investigation by providing false information to a law enforcement officer, N.J.S.A. 2C:29-3(b)(4).

Affirmed and remanded for amendment of the Judgment of Conviction in a manner consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1686-16T4